### DOBBINS v. BLANCHARD, HUMBER & COMPANY.

1. A joint note and mortgage being executed by husband and wife for a consideration in money afterwards to be advanced by a creditor, the wife is bound only to the extent of so much of the consideration as she afterwards received; and in order to charge her with advances made to her husband on drafts drawn and signed by him individually and not as agent for her, the creditor must show, not only that he was authorized to act as her agent, but that he so acted in drawing the drafts and receiving their proceeds, or else that the proceeds were actually used for her benefit in the business to which his agency related.

2. A power of attorney by which a wife appoints her husband to act for her, reciting that she has this day nominated and appointed and does by these presents nominate and appoint and authorize

him to transact all and any business for her, make for her all nec-
essary purchases for cash or on credit, and execute and sign such
notes, mortgages, deeds and other papers as to him may seem
proper and right for the advancement and proper management of
her business of every sort, and declaring that she ratifies and
confirms all his acts made for her "in pursuance of the aforesaid
purposes from and after this date, as fully and completely as if
done by" herself, is no authority for or ratification of drafts pre-
viously drawn by the husband in his own name, and consequently
this power will not of itself justify any charge against her for the
amount of such drafts; nor will she be chargeable with the
amount of similar drafts drawn by him after the execution of such
power, without extrinsic evidence showing that he acted as her
agent or attorney in drawing the drafts and receiving the proceeds,
or, if he did not, that he actually applied the proceeds to her use
and not his own use.

3. The action being upon a joint promissory note made by husband
and wife, evidence that in point of fact the credit was given to the
wife only is not competent. This would contradict the written
contract on which the action is founded.

4. One of the plaintiffs, testifying as a witness, having stated in his
evidence that he was not personally acquainted with the defendant
when she shipped certain cotton and that all communication be-
tween them had been by letter, and the letters themselves being
in evidence, it was not competent for him to testify that she shipped
the cotton for a specified purpose, inasmuch as this purpose could
not be known to him except from the correspondence or by
hearsay.

5. In an action against the wife upon a joint promissory note made
by her and her husband, evidence is relevant which shows that a
part of the consideration went directly from the creditor to the
husband on a draft or check drawn by him individually, and was
used by him or by a firm of which he was a member. As to money
obtained by a husband on the joint credit of himself and wife and
applied to his own use, he is the real primary debtor, and the wife
is in the position of a surety.                    *Judgment reversed.*

April 16, 1894.   Argued at the last term.

*Assumpsit.*   Before Judge GUERRY.   Clay superior
court.   March term, 1893.

In July, 1891, Blanchard, Humber & Company sued
Mrs. Dobbins on a promissory note dated February 17,
1890, and foreclosed a mortgage given to secure the note;
both of which were executed by the defendant and by her
husband, Dr. W. O. Dobbins, who died December 16, 1890.

Both cases were consolidated and tried together; and the jury found for the plaintiffs the balance they claimed to be due on the note and mortgage, $1,271.59 principal, besides interest and attorney's fees. The defendant's motion for a new trial was overruled. She set up by her pleas: (1) That the note sued on was not her debt but that of her husband, and made by him and her to cover whatever advances the plaintiffs might make or had made to him during 1890; that at the time of making the note she had not obtained for herself or on her own account any advances or money, nor was she in any way indebted to plaintiffs, nor was her husband at that time indebted to them except for about $340.98 previously obtained by him, and of that indebtedness she knew nothing until long afterwards; that she had no voice in fixing the amount of the note; that plaintiffs and her husband were trading and dealing among themselves without any consultation with her, only just as her signature was needed to a note or mortgage to secure his indebtedness; and that her signature to the note was required and given only as a device to secure the drafts to be drawn by him for his business ventures. (2) At no time did she obtain money or anything else of value from plaintiffs before December 25, 1890, after which date she obtained at different times the aggregate amount of $1,366.89, and from January 1 to March 1, 1891, she shipped 96 bales of cotton to plaintiffs, who were cotton factors at Columbus, and they on March 13 sold same for more than enough to pay said $1,366.89, and same has been fully paid; and plaintiffs illegally applied the balance of the proceeds of sale to the payment of advances made by them to Dr. Dobbins, and to the payment of drafts and checks drawn by him on them in furtherance of his various individual and personal enterprises.

In evidence appeared a power of attorney from de-

fendant to her husband, dated March 22, 1890, the sub-stance of which is recited in the second head-note. In connection with it appeared a letter from plaintiffs to Dr. Dobbins, dated March 14, 1890, stating: "We no-tice that your drafts are signed by yourself. We are keeping the account against Mrs. Dobbins. Hence it has occurred to us that, as a matter of business, we would ask Mrs. Dobbins to send us in writing a power of attorney to you, showing that you have full power to make drafts and transact this business, &c. We know that you have, and that if you live there will be no trouble; but, as before said, this is the business way to do it."

The motion for new trial alleges error:

1. In refusing to charge, as requested: "Whether or not Mrs. Dobbins is bound for this debt depends upon whether or not the note was to get money for a venture of her own, or whether she signed as security for her husband in his business or to pay his debts; and if either of the latter considerations induced her to sign it, she is not liable and you should so find. The test in this case is, whether Mrs. Dobbins shared in the benefit of said note and mortgage. If she did not share in the consideration, she is not bound." And in charging the jury thus: "If you believe this was Dr. Dobbins' debt created by him, and she signed it as security for him, you should find for the defendant; but if you should be-lieve it was a joint debt of her and her husband together, you should find for the plaintiff."

2. In charging: "If you should believe it was a debt created by Mrs. Dobbins, and the credit given to her and not the husband, and she signed the note and mortgage for the amount, you should find for the plaintiffs. If she ratified the acts of her husband by signing the note and mortgage, and borrowed the money, you should find for the plaintiffs, no matter where the money went; if

the husband drew the money out by drafts and she after-wards ratified it by giving him a power of attorney to do so, she would be bound. To render the note void, it becomes the duty of the defendant to show that Mrs. Dobbins did not contract this debt either by herself or through her husband or in connection with him, or that it was his debt secured by her. If at the time Dr. Dobbins was acting for his wife, doing so as her agent with her knowledge and authority, and if she ratified his acts by entering into a note and mortgage, she would be bound by it, and the jury should find for the plaintiffs." Also, that the court omitted to construe the power of attorney, and failed to call to the attention of the jury that the power contained words of limitation, and made no reference to the power in charging the jury, except in the instruction excepted to, wherein the power is spoken of as a ratification of the drawing of money by Dr. Dobbins. Plaintiffs' counsel argued in conclusion that the power was a ratification of all the acts of Dr. Dobbins before and after its execution. Also, that the court failed to charge, that before defendant could be bound by any act or words of apparent ratification, the jury must believe she was fully informed and knew all about her liabilities, her rights and the demands against her.

3. In allowing Blanchard, one of the plaintiffs, to testify that they gave the credit to Mrs. Dobbins, although he admitted that they and their agents never had any communication, correspondence or negotiations with her about the matter, except by letters from her husband,. the power of attorney, and the note and mortgage. The objection to this testimony was, that the whole matter was in writing, and that Dr. Dobbins was dead.

4. In allowing Blanchard to testify that Mrs. Dobbins shipped the 96 bales of cotton to plaintiffs for the pur-. pose of paying this debt she created under this note and

mortgage; the ground of objection being, that the witness had stated he did not know Mrs. Dobbins, and whatever transactions occurred between them were in writing, there being no showing or claim that any letter or paper was lost or mislaid.

5. In ruling out the testimony of Wimberly, a witness for defendant, under the following circumstances: He testified that he was a member of the firm of W. O. Dobbins & Co., and that about May 23, 1890, Dr. Dobbins sent a check on plaintiffs for something over $200 for the benefit of the firm to the Terry Manufacturing Co. Witness never saw the check. The court sustained an objection to this testimony, stating that "defendant had better show the check." Defendant's counsel stated that they had served plaintiffs with notice to produce this check. Plaintiffs' counsel stated that they had produced every check they had been called on to produce. Then defendant recalled Blanchard, one of plaintiffs, who testified: "I expect we have the check you are inquiring about, and am willing to admit the check was drawn on the order of Dr. Dobbins. The check is either here or in Columbus; it was our check on the bank. The bank paid the check before it came back to me as a voucher. Defendant did not call on us for checks." Wimberly was then recalled, and testified that the money that paid the claim of the Terry Manufacturing Company against the firm of W. O. Dobbins & Co., did not come out of the firm. To this plaintiffs objected because irrelevant, and the objection was sustained.

J. D. RAMBO and F. B. DILLARD, by HARRISON & PEEPLES, for plaintiff in error. W. C. WORRILL, *contra*.