### 15712.  BAILEY *v.* GEORGIA RAILWAY AND POWER CO.

1. "A railway company has the right to make reasonable rules and regulations prohibiting passengers from occupying positions on its cars considered to be dangerous, except at their own risk; but when, notwithstanding such rules, passengers are permitted, and in some instances required, to occupy such positions, the company is still under the duty to exercise extraordinary care and diligence for their safety."
2. It appeared that the plaintiff was a passenger upon one of the defendant railway company's street-cars, and that while riding, with the company's knowledge and consent, upon the steps thereof, he was injured in a collision between the street-car and an automobile. The evidence was such as to make it a jury question as to whether the railway company was negligent in not providing the plaintiff with a safe place in which to ride, in failing to observe the automobile approaching the path of the street-car, and in failing to stop the street-car, in time to avoid the collision.
3. It cannot be said as a matter of law that one who is injured while riding in such a position as a passenger upon a street-car is so negligent as to be barred from recovering for negligence of the railway company, unless, under the peculiar conditions, the danger is so obviously great that no one of ordinary prudence would subject himself thereto.
(*a*) The court committed error in granting the judgment of nonsuit.
4. The court erred also in allowing a witness to testify as a mere conclusion, over appropriate objection by the plaintiff, that "the accident was unavoidable."

DECIDED OCTOBER 16, 1924.

Action for damages; from Fulton superior court—Judge Humphries. March 26, 1924.

*Parker & Patterson, Wayne Allen,* for plaintiff.
*Colquitt & Conyers,* for defendant.

BELL, J.   George Bailey brought suit against the Georgia Railway and Power Company for damages on account of personal injuries alleged to have been caused to him by its negligence while he was riding as a passenger upon one of its street-cars.   The case is here upon exceptions to the grant of a nonsuit.

The plaintiff alleged: that on July 5, 1920, he boarded the defendant's car in the city of Atlanta at a station known as Campbellton Road, and paid his fare to the city of East Point; that the car was so crowded that he could not go inside, and it was necessary for him to stand on the steps; that he was in this position when he paid his fare, and that the conductor knew that he was so riding. "He was standing on the rear right-hand step." The street-railway tracks ran north and south, occupying the east side of a public road, and "there is a concrete pavement on the road west of said street-car tracks, about twenty feet wide and extending up to within about eighteen inches of the street-car rail; *and all of the traffic except the street-cars is over that portion of the road which is paved with concrete.*" (Italics ours.)   As the street-car proceeded south it approached an automobile traveling in a northerly direction, driven by one H. R. Williams.   The right-hand wheels of the automobile were running between the concrete pavement and the street-car rails, where there was a deep ditch or rut, out of which the driver was unable to steer the automobile, and both the street-car and the automobile kept running in the direction of each other until they collided.   When the collision occurred the automobile struck the plaintiff's feet and knocked them off the steps, on which he was still standing, and as a result the plaintiff suffered described injuries.

Referring to the specifications of negligence in their inverse order, it is alleged that the railway company was negligent, (1) in failing "to provide a safe place for plaintiff to ride when it accepted him as a passenger, as it was said defendant's duty to do, and that said defendant accepted plaintiff as a passenger knowing said car was already overcrowded, and forced plaintiff to ride on said steps;" (2) "in that the agents of said company in charge of said car failed to observe said automobile approaching on the tracks, and not bringing said street-car to a stop and avoiding said collision;" (3) in that the defendant allowed "the road-bed which was occupied by its tracks to become in a bad condition; that

the ditch or rut which was alongside the street-car rail in which said automobile was running was caused by the defective ties under the rails of said tracks; that said ties had become decayed and were in a dilapidated condition, and as a result of said defective condition of said ties the road-bed at that place had sunk in and a deep ditch or rut caused thereby between the car rail and the concrete pavement; that the defendant H. R. Williams could not steer his said automobile out of said rut and drive by said street-car without colliding with the same; that had said rut not been there, which was caused by the negligence of said Georgia Railway and Power Company, said Williams could have steered said automobile from the path of said car and passed it without colliding with the same; that the condition of said ties and said street was well known to said Georgia Railway and Power Company, or by the exercise of ordinary care it should have known of the same."

The evidence developed, without dispute, that shortly before Williams met the street-car he observed an automobile that stopped on the west side of the pavement, which was about thirty feet in width, and that two other automobiles were traveling south at a rapid rate of speed, apparently racing, which he was about to meet at a point alongside the standing automobile, and to which he deemed it necessary to give room. These two vehicles were, of course, traveling in the same direction with the street-car, approaching it from the rear. It seems that Williams alone had knowledge of the dangerous condition of the traffic upon the pavement, and steered off it at the particular time for his own safety. The plaintiff established that he was a passenger riding upon the street-car in the position alleged. He testified that the car was crowded, so that he could not go inside, and that the conductor knew where he was riding. He was talking to the conductor immediately before the collision. His back was toward the traveled portion of the public road, and he was holding to a rod attached to the street-car. It is unquestioned that he was struck and injured by the automobile. He knew nothing himself of the cause of the collision.

The evidence next to be referred to was not undisputed in all points, but the jury could have believed it in preference to the testimony at variance therewith. One of the passengers, James Callahan, testified that the street-cars extend about to the edge of

the pavement; that there were ruts "all along there in different places" between the pavement and the street-car track; that he could not say "how far the street-car ran after the collision occurred, but it moved on some feet after it hit before it stopped; after the collision occurred the street-car and the automobile just separated, both of them running just a little bit. The street-car was one of these long ones." Williams, the driver of the automobile, testified that as he was forced off the pavement on the side next to the railway track, the wheels of his automobile got into a groove about four or five inches deep, and that he was unable to get them out before the collision. He placed the distance between the pavement and the street-car rails at about eighteen inches. He testified that his automobile was "standing still at the time of the contact." Other testimony of this witness was as follows: "At the time when I saw the street-car and the automobile were about to collide, at the time of the collision, I had room to swerve to my left and miss the street-car; there wasn't anything else in my way to prevent it except that I couldn't turn out, because I was in that groove, in a rut. . . When the street-car was going south and I was going north, I going about ten or twelve miles an hour and it going about fifteen or twenty, on the general and regular schedule, that would make an aggregate speed of thirty-two miles an hour; and at about that time there were two automobiles coming racing from town, meeting me, and to avoid these two racing automobiles I had to cut to my right a little, and when I did I dropped down off the edge of the concrete pavement, and in that position, before the street-car could stop, or before I could get out of the way, this side-swipe collision happened. I couldn't get back on the road. At the time the wheel of the automobile dropped off the concrete paving the street-car and I were about as close together, I should say, as from here to the banisters, may be a little further, about thirty or forty feet, something like that." The automobile was a Ford.

Frank Wilson, who was also a passenger upon the street-car, testified that he was sitting on the front platform with his feet on the step, and that at the time of the collision "the street-car could not have been going very fast;" it was "just crawling along there;" it did not run more than a car-length after the automobile hit it.

1. "A railway company has the right to make reasonable rules and regulations prohibiting passengers from occupying positions on its cars considered to be dangerous, except at their own risk; but when, notwithstanding such rules, passengers are permitted, and in some instances required, to occupy such positions, the company is still under the duty to exercise extraordinary care and diligence for their safety." *Augusta Railway & Electric Co.* v. *Smith,* 121 *Ga.* 29 (1) (48 S. E. 681). See also *Southern Railway Co.* v. *Nappier,* 138 *Ga.* 31 (2) (74 S. E. 778). The care which the defendant owed to the plaintiff was to be exercised with reference to the position on the car which, with the knowledge and consent of the company, the plaintiff occupied. The defendant's duty, however, extended only to the protection of the plaintiff from dangers which were natural and probable, or which in the exercise of extraordinary diligence it should reasonably have anticipated or foreseen. *Gillespie* v. *Andrews,* 27 *Ga. App.* 509 (1) (108 S. E. 906). Assuming, without deciding, that it was the duty of the railroad company to maintain in a condition fit for travel that part of the public road between the concrete pavement and its track, and that the unfit condition thereof should be attributed to the defendant as negligence (*Georgia Railway & Power Co.* v. *City of Atlanta,* 153 *Ga.* 335, 113 S. E. 420), we do not think that the negligence of the defendant in this respect could be said to be the proximate cause of the plaintiff's injury. The averment in the petition that "all of the traffic except the street-cars is over that portion of the road which is paved with concrete" precludes any contention on the part of the plaintiff that the railway company should have anticipated that an automobile would be traveling off the pavement and in the ditch or rut between the pavement and the street-car track, either by the driver's choice or because of the unusual condition of the vehicular traffic which made the same necessary in the particular case. Even conceding, therefore, that the railway company was negligent in not maintaining suitably to traffic that part of the road between its track and the pavement, its negligence in this respect could not be said to be a cause proximately contributing to the plaintiff's injury. The plaintiff is bound by the case which he makes in his petition. See *New Zealand Ins. Co.* v. *Brewer,* 29 *Ga. App.* 773 (116 S. E. 922).

The case should be considered, we think, just as if the automobile

had gotten to that side of the road, and, for some other reason than the ditch or rut (as for instance a broken wheel), the driver was unable to steer it back to the pavement.

2. As indicated in the preceding division, there could be no recovery upon the specification of negligence designated above as number 3: We are of the opinion, however, that with respect to the other allegations thereof the evidence was such as to entitle the plaintiff to go to the jury. It is inferable that the agents of the railway company knew of the ditch or rut in that portion of the road over which its street-cars regularly passed, and also that the motorman, in the exercise of proper care, should have seen the automobile actually in the path of his car. We do not hold that the agents of the railway company should have anticipated that the automobile would *leave the pavement* and come within the range of the street car; but it certainly cannot be said that the defendant was without a duty to keep a lookout directly ahead of the street-car and to see the automobile after it once got in the street-car's way. The witness Williams testified that when the automobile got off the pavement the distance to the street-car was thirty or forty feet, and that the automobile was traveling ten or twelve miles per hour and the street-car fifteen or twenty. The jury were authorized to find in accordance with the version of his testimony most favorable to the plaintiff. They could have believed that the automobile was traveling at ten miles and the street-car at fifteen miles per hour, and that they were forty feet apart when the one got in front of the other. To this should be added the length of the street-car (which was "one of these long ones"), because the plaintiff was standing upon the steps at the opposite end of the street-car from the automobile. A calculation will show that an object moving at the speed of twenty-five miles per hour (this being the minimum aggregate speed of the two vehicles, according to one construction which the jury could have placed upon the evidence) moves thirty six and two-thirds feet per second. But when we remember that the automobile itself, according to the same witness, had stopped before the contact, and also that one of the witnesses testified that the street-car was merely "crawling," we think that it was a jury question as to whether the street-car could not, in proper diligence, have been stopped before the plaintiff at the rear end thereof was brought into contact with the automobile, even though

it might not have been possible to avoid the collision between the automobile and the front end of the street-car. One witness testified that the contact between the two was just to the rear of the front right-hand steps, and that the automobile scraped on down to the back steps.

We conclude that the jury in their exclusive province would have been authorized to find that the defendant was negligent in failing to provide the plaintiff a safe place in which to ride, and in failing to observe the approaching automobile, and in not bringing the street-car to a stop in time to avoid the collision between the automobile and that part of the street-car where the plaintiff was situated. See *Collins* v. *Augusta-Aiken Ry. Corp.,* 13 *Ga. App.* 124 (1) (78 S. E. 944) ; *Cordray* v. *Savannah Electric Co.,* 5 *Ga. App.* 625 (63 S. E. 710) ; *Cowart* v. *Savannah Electric Co.,* 5 *Ga. App.* 664 (1) (63 S. E. 804).

3. It cannot be said as a matter of law that the plaintiff's presence upon the steps was such negligence as would preclude a recovery. Ordinarily, the question as to whether such conduct is negligence is one for the jury, and should not be determined by the court as a matter of law unless the danger is so obviously great that no person of ordinary prudence would voluntarily subject himself thereto. *Augusta Southern R. Co.* v. *Snider,* 118 *Ga.* 146 (44 S. E. 1005) ; *Central of Georgia R. Co.* v. *Forehand,* 128 *Ga.* 547 (1) (58 S. E. 44) ; *Myrick* v. *Macon Railway & Light Co.,* 6 *Ga. App.* 38 (1) (64 S. E. 296). We conclude that the court committed error in granting the nonsuit.

4. The court erred also, as assigned, in permitting the witness Williams to testify, over appropriate objection by the plaintiff, that "the accident was unavoidable." This was a mere conclusion, which was to be drawn or not by the jury, according to the opinion which they entertained of the facts and circumstances in evidence. *Macon &c. R. Co.* v. *Stewart,* 125 *Ga.* 88 (1) (54 S. E. 197). This error would have been harmless, however, if the other evidence, as a matter of law, had failed to show that the plaintiff was entitled to recover.

*Judgment reversed. Jenkins, P. J., and Stephens, J., concur.*