27010.   BOZEMAN *v.* BROCK.

DECIDED NOVEMBER 23, 1938.

*Robert Culpepper Jr.,* for plaintiff in error.

*J. D. Gardner, Carl E. Crow, W. W. Warren,* contra.

GUERRY, J.   T. K. Brock sued Mrs. J. R. Bozeman and J. R. Bozeman on a note signed by them as joint makers. Mrs. Bozeman filed a plea alleging that she signed the note as surety for her husband at the request of the plaintiff, and that she received no consideration therefor.

It appears from the evidence that the original note, of which the note sued on was given in renewal, was executed in May, 1931. For several years before that time J. R. Bozeman had operated, in his own name, a farm belonging to his wife. During this

period he dealt with the plaintiff, a merchant, in purchasing supplies for the operation of the farm. These purchases were handled on open account. J. R. Bozeman testified: "During the first part of 1931, I purchased supplies from T. K. Brock to operate my farm . . which supplies were bought in my name and charged to me. Around the middle of the year Mr. Brock told me that he could not continue to extend me credit without some security, and asked me to get my wife to sign a note with me, and . . I went out to the house and had Mrs. Bozeman sign note with me, and put up as security Chevrolet automobile, which belonged to me. This note was for $150. I was unable to pay Mr. Brock the note at the end of the year, nor during the next year, and in June, 1932, gave him a renewal note, covering the principal amount of the first note, plus interest, which is the note now being sued upon in the amount of $203. . . In purchasing supplies to operate the farm, I was not acting as the agent of Mrs. Bozeman, nor was she operating the farm herself." Mrs. Bozeman testified: "My name is Mrs. J. R. Bozeman. I signed the note which you present to me in the amount of $203. I do not know what the consideration of the note was. John brought it out to me and told me to sign it, and I did. I have never had an account with Mr. Brock and have never talked with him about opening one. John farms on my land and has done so for a number of years. I do not operate the farm and have never done so. I have never authorized him to act as my agent in any way whatsoever."

The pertinent parts of the plaintiff's testimony are as follows: "For several years prior to 1931 I had done business with John Bozeman on open account, 30 days, 60 days, and longer periods of time. Times were hard in 1931, and I started off that year furnishing supplies to John on open account on 30-day basis. The supplies furnished were groceries, flour, shoes, etc., farm supplies. After he became indebted to me in some small amount, exactly how much I do not recall, perhaps $40, I told him that I could not carry him any longer. That he would have to get some one to assume the debt for him. I told him that I would have to have some security, because with an open account against him all I had was a moral risk, because he had nothing. We estimated what the needs would be for the remainder of the year and made out this note for $188.50, and he went out to his house and got his wife to

sign the note with him, and I assumed that from this time on he was acting as her agent. He told me he would handle the matters for his wife." On cross-examination: "I have done business with Mr. Bozeman for several years prior to 1931, and advanced supplies to be used on his farm, and started off doing this in 1931, but around the middle of the year, times being hard, I felt that I couldn't carry him any longer as the only security I had was a moral risk. I told him that I would have to have some security and his wife, of [or?] some one else, would have to assume the indebtedness for supplies that he might get or want in the future. . . I assumed that he was acting as her agent. In so far as any knowledge that I have or had, the farm was operated by him. As stated before, I have done business with him for several years and started off with him, in his own name, in the farm year of 1931. I have never talked with Mrs. Bozeman about the matter at all, before or since the execution of the note." The jury returned a verdict in favor of the plaintiff and Mrs. Bozeman excepted to the overruling of her motion for new trial, which contains only the usual general grounds.

"A note made by the wife for a loan to her husband, and indorsed by him, where the payee of the note knows this fact at the time of its execution, can not be collected from her by the payee." *Allmond* v. *Mount Vernon Bank,* 53 *Ga. App.* 565, 566 (186 S. E. 581). Although a joint note is signed, if the creditor or payee have knowledge that the consideration thereof is for the benefit of the husband alone and the wife receives no part of the consideration, she may not be compelled to pay. *Dobbins* v. *Blanchard,* 94 *Ga.* 500 (21 S. E. 215); *Jones* v. *Weichselbaum,* 115 *Ga.* 369 (41 S. E. 615); *Smith* v. *Hardman,* 99 *Ga.* 381 (27 S. E. 731). Where, upon the trial of an action on a note signed by husband and wife there is affirmative and uncontradicted evidence that the wife in signing contracted as surety only, which fact was known to the payee, a verdict against the wife is contrary to law and should be set aside. *Munroe* v. *Haas,* 105 *Ga.* 468 (30 S. E. 654). We think the evidence demanded a finding that no part of the consideration of the note sued on went to the defendant wife, and that the plaintiff had knowledge that the wife was signing the same as security for advances which were to be made her husband on a venture of his own. There is no evidence to warrant any assump-

tion by the plaintiff that the relationship theretofore existing had been changed, and that the husband was acting as agent for the wife. The court erred in overruling the motion for new trial.

*Judgment reversed. MacIntyre, J., concurs. Broyles, C. J., dissents.*

BROYLES, C. J., dissenting. I think that the evidence authorized the jury to find that the plaintiff did not know that the defendant signed the note sued on as surety for her husband, but that he believed she signed it as a maker, jointly with her husband. This being true, the verdict in favor of the plaintiff was authorized. *Schofield* v. *Jones,* 85 *Ga.* 816 (11 S. E. 1032) ; *Tuck* v. *Kellum,* 36 *Ga. App.* 465 (137 S. E. 102) ; *Trammell* v. *Swift Fertilizer Works,* 121 *Ga.* 778 (49 S. E. 739) ; *Lovelady* v. *Moss,* 50 *Ga. App.* 652 (179 S. E. 168), and cit.