47385. FISHMAN et al. v. THE STATE.

ARGUED SEPTEMBER 13, 1972 — DECIDED MARCH 14, 1973.

*D. Freeman Hutton, Robert Eugene Smith,* for appellants.

*Ken Stula, Solicitor,* for appellee.

DEEN, Judge. ■ In passing on the obscenity issue, a statement of criteria is in order. First, we construe Code Ann. § 26-2101 (b) to be substantially in the language of and to express the meaning of the term as defined in Roth v. United States, 354 U. S. 476, 491-492 (77 SC 1304, 1 LE2d 1498). Further, understand Code Ann. § 26-2101 (c) to apply the standards enunciated in Ginzberg v. United States, 383 U. S. 463 (86 SC 942, 16 LE2d 31); that is, in a close case where there is a valid argument of the existence of some *slight* social value of a literary, historical, artistic or technical nature, a finding of obscenity will not be made "even though the book is found to possess the requisite prurient appeal and to be patently offensive" (Memoirs v. Massachusetts, 383 U. S. 413, 419 (86 SC 975, 16 LE2d 1)), unless there is also clear evidence that the material has passed the threshold of permitted exposure in that its commercial dissemination amounts to pandering, or it is made available to juveniles or it becomes impossible for the unwilling individual to

avoid exposure. Cf. Great Speckled Bird v. Stynchcombe, 298 FSupp. 1291. It is apparent that material which is utterly mindless, which contains no ideas and raises no connotations whatever except those related to "raw sex," which completely lacks all artistry in its pictorial representations and even the minimum standards of stylistic expression or thought in its verbiage, may be held *utterly* without redeeming social value, whereas other material, although exceeding in candor the standards of acceptability, may nevertheless, by the ideas it expresses, although out of tune with the mainstream of contemporary local thought, have some value which protects it under First Amendment guarantees, and both courts and juries must make an honest effort to distinguish between that which they find personally unacceptable and that which, under any standard, is mawkish trash and verbal or pictorial garbage. Milton, condemning censorship as evil in the Areopagitica, was dealing with ideas, a commodity in which we find State's Exhibit 1 singularly lacking. The written filler is almost meaningless in its lumbering attempts to invoke mental images of extremely basic physical activities. The main effort at prurient appeal is concentrated in the photographs, including a large percentage of anatomical close-ups, of the type described as constitutionally obscene in Miller v. United States, 431 F2d 655, United States v. 392 Copies, 253 FSupp. 485, 373 F2d 633; City of Youngstown v. DeLoreto, 19 Ohio App. 2d 267 (251 NE2d 491) and State v. Bongiorno, 103 N.J. Super. 515 (247 A2d 893), these cases drawing the distinction between nudity per se, which is not obscene, and exclusiveness of prurient emphasis which constitutes the subject matter of hard core pornography. Taking these criteria into account, we have no difficulty in upholding the jury verdict finding the material obscene in the constitutional sense. Enumerations of error 1, 20 and 24 are therefore without merit insofar as subject matter is concerned.

■ Enumerations of error 21, 22, 23, 27 and 28 are meritorious in that the case was tried on the theory that the "community standards" referred to in Code Ann. § 26-2101 (b) refer solely to the standards of the local community in which such matter has been exhibited, excluding consideration of community standards of other places. As was correctly held in *Feldschneider v. State,* 127 Ga. App. 745 (195 SE2d 184), *Gornto v. State,* 227 Ga. 46 (5) (178 SE2d 894) must yield to the holdings of the Supreme Court in Jacobellis v. Ohio, 378 U. S. 184 (3) (84 SC 1676, 12 LE2d 793); Roth v. United States, 354 U. S. 476, supra; Manual Enterprises, Inc. v. Day, 370 U. S. 478 (82 SC 1432, 8 LE2d 639), Memoirs v. Massachusetts, 383 U. S. 413, supra, and Redrup v. New York, 386 U. S. 767 (87 SC 1414, 18 LE2d 515), in this regard. Since these cases were written the U. S. Supreme Court has reversed the following convictions in memorandum opinions, simply citing Redrup as authority: Childs v. Oregon, 401 U. S. 1006 (91 SC 1248, 28 LE2d 542); Bloss v. Michigan, 402 U. S. 938 (91 SC 1615, 29 LE2d 106); Hartstein v. Missouri, 404 U. S. 988 (92 SC 531, 30 LE2d 539); Wiener v. California, 404 U. S. 988 (92 SC 534, 3 LE2d 539); Burgin v. South Carolina, 404 U. S. 806 (92 SC 46, 30 LE2d 39). The community standards to be applied are those of the national, not the immediate local community.

■ Enumerations of error 5 through 10 complain of allowing Tate Brown, an investigator for the district attorney's office and former employee in the sheriff's office, to testify as to what various photographs in state's Exhibits 1 and 2 depicted, that in his personal opinion the material was obscene, that it predominantly appealed to a prurient interest and that he found no redeeming social value in it, along with other similar testimony, over the objection that he had not been qualified by background or training to render such an opinion. We agree that there was no attempt to qualify this witness as an expert, nor did he qualify as one swearing to his opinion and belief,

under Code § 38-1708 because he stated no facts on which his opinion was based. The witness' nonexpert testimony of what he thought the pictures in the magazine depicted was irrelevant because the magazines themselves were tendered in evidence and were the best evidence of what they contained. *Dobbins v. Blanchard, Humber & Co.,* 94 Ga. 500 (4) (21 SE 215). More important, the witness was being asked his mere conclusory opinion as to the ultimate fact the jury was called on to decide, that is, whether the magazines sold were obscene, which was a question for the jury and not the witness to decide. See *Akin v. Randolph Motors, Inc.,* 95 Ga. App. 841 (3) (99 SE2d 358); *Central R. v. DeBray,* 71 Ga. 406; *Fowler-Flemister Coal Co. v. Evans,* 20 Ga. App. 200 (92 SE 1010); *Bailey v. Ga. R. &c. Co.,* 32 Ga. App. 793 (124 SE 907). Obviously, when one is on trial for a crime, whether or not the conduct proved brings it within the statutory inhibition can never be a mere matter of conclusory opinion, even for a juror who must decide it on the evidence before him, and much less on the opinion of the prosecutor. It was error to allow the witness Brown to express his personal opinion of the obscenity, prurient appeal, and lack of social value of the material. The fact that Brown was asked on cross examination what he understood the meaning of obscenity to be did not open the door to an expression of opinion by him of the ultimate issue of the obscenity of the magazines, and it was error to admit his nonexpert opinion testimony. The testimony of Julius Bishop complained of in enumerations of error 14 through 19 was not subject to the same objections, but, as pointed out above, the inquiry cannot be *limited* to the standards and tenets of the local as opposed to the national community. The testimony is admissible, the credit to be given it to be for the jury, which should take into consideration any limitations of knowledge on the part of the witness as shown by proper cross examination.

■ The second and third enumerations of error deal with the inability of counsel for the defendants to obtain a list of the state's witnesses until a few moments before the case went on trial. Code § 27-1403, as amended by Ga. L. 1966, pp. 430, 431 requires that every person charged with crime "shall be furnished, on demand, previously to his arraignment, with a copy of the accusation, and a list of the witnesses on whose testimony the charge against him is founded. Without the consent of the defendant, no witness shall be permitted to testify for the state whose name does not appear upon the list of witnesses as furnished to the defendant" unless the prosecuting attorney is willing to state that the evidence offered is newly discovered.

These defendants (Fishman, Jernigan and Smith) were arrested on May 28, 1971, following the purchase of the two magazines at the Paris Adult Theater. True bills were returned against them on indictments presented at the July Term of the Superior Court of Clarke County. Prior to this, on April 28, 1971, and apparently referring to other magazine sales at the Paris Adult Theater involving Jernigan and Smith but not Fishman, defendant's counsel wrote the district attorney requesting copies of indictments, should the defendants be indicted, and also the list of witnesses. On August 9 the cases were transferred to the State Court of Clarke County. Counsel was informed by his clients that they would be arraigned on Friday, August 13. His prior attempts to contact the solicitor were unsuccessful, and he appeared on the 13th and made written demand for the indictment and list of witnesses. Formal arraignment was then postponed until Monday, August 16. Although the defendants were given a copy of the indictment on Friday they were not given the list of witnesses (except for two of the nine whose names appeared on the indictment) until immediately prior to arraignment, and immediately thereafter the case was called for trial. A

motion for a continuance was made and denied at that time and this judgment is also enumerated as error.

We agree with counsel for the state that the words "on demand, prior to arraignment" mean that the demand must be made prior to the arraignment, but that "on demand" cannot be construed to mean "instanter," and must therefore be taken to imply as soon as possible after the demand is made. Presumably the following day would be sufficient. Here, however, the list was not presented until Monday and it is contended that this was sufficiently prompt since it was the following work day. However that may be, it is obvious that to hand over the list immediately before the call of the case for trial was an empty compliance, since counsel, being occupied with the arraignment, motions, and the striking of the jury, was doubtless precluded from putting it to any use. Under these circumstances, overruling the motion for continuance or postponement and forcing the defendants to immediate trial was error which "abridged the substantial benefits of the constitutional right to representation by counsel" under the rationale of *Ivey v. State,* 107 Ga. App. 646 (131 SE2d 114). A specious and empty compliance with the formalities of law which results in the withholding of that which the spirit of the law seeks to grant cannot be countenanced. These grounds show reversible error.

■ Enumerations of error 11, 12 and 13 complain of the introduction in evidence of three notices to renew business licenses from the City of Athens. The first is stamped April 1, 1971, is a "motion picture entertainment" license to the 106 Forsyth Corp. doing business as Paris Theater and signed "Phillip A. Fishman, President." The second is for "vending machines" for "Cinematics (Phillip Fishman, owner)" and signed "Bobby Jernigan, Mgr.," dated May 17, 1971. The third, dated June 14 for "amus. machines" also signed by Jernigan, does not contain Fishman's name, is

made out to "Cinematics" and states: "This license covers the machines only and not any films shown."

Various objections are urged. We recognize that the third renewal notice was made out after these indictments were issued, and also that the presumption that a state of fact once shown to have existed will continue does not apply in criminal cases (*Sokolic v. State,* 228 Ga. 788, 790 (187 SE2d 822)), and therefore hold that the third exhibit, issued 16 days after the arrest, may be considered with the second, issued 11 days before, for the limited purpose of showing Jernigan's connection with the place at which the violations allegedly occurred in his capacity of manager of amusement devices. They do not, of course, show that he managed magazine sales, since there is no evidence of whether or not the magazine sales or concession, as the case might be, were related to Cinematics. Nor does the typed statement "Phillip Fishman, owner" following "Cinematics" in the second notice bind Fishman. The only testimony relating to the typewritten fill-ins was that they were usually done by the city authorities, and no proof is offered either that Fishman was connected with Cinematics or that Cinematics sold the magazines. The first notice, of course, which was signed by Fishman, is evidence that he, as president of the 106 Forsyth Corp., was buying a license for the corporation to show moving pictures, and the second two, signed by Jernigan, are evidence that Jernigan managed a business on the premises dealing with amusement or vending machines. The three exhibits were properly admitted in evidence, but only for the limited purposes herein discussed.

Here, as in *Sokolic,* supra, there is no evidence that Fishman was ever on the premises in question, that he had anything to do with the magazines or even with the theater except in his capacity as president of the corporation which owned it. The magazine business could have been leased out as a concession, or could have been

under his direct management and control, or could have been under the management and control of a board of directors of its corporate owner. But where, as here, there is no evidence of how large the corporation is, or who its governing body is, or whether or not Fishman as president had a controlling interest in it so as to make him its alter ego, all that is proved by the above is that the corporation was guilty of offering obscene magazines for sale. The situation is much like Ledbetter v. State, 20 Ala. App. 626 (104 S 777), where the court reversed the conviction of Ledbetter for keeping a business open on Sunday in violation of certain blue laws. The court held: "The sole connection of the defendant . . . was that he, as president of the corporation . . . employed Smith to manage the place. It nowhere appears that Smith was instructed by him, or aided by him, or authorized by him to keep the place open on Sunday. The proof, as shown by the record, was not sufficient to sustain the conviction of the defendant."

Here we do not even have evidence that Fishman employed Jernigan or Smith, and we have no evidence at all that he and the corporation are a single entity. It must be presumed that they are entirely separate and distinct. It follows that the record is also devoid of proof sufficient to convict Fishman of selling or of offering for sale. See also *Sokolic v. State,* 228 Ga. 788, supra.

■ Enumerations of error 4, 25 and 26 are not passed upon as not likely to recur. The requests to charge seem generally to embody sound rules of law, but in view of the fact that some of them are repetitious and that the case is to be tried again we will not attempt to sort out the language requested in comparison with the language used in order to ascertain whether or not it meets the "substantial compliance" test, except to point out that requests 37 and 38 which state, in the language of the U. S. Supreme Court in Kingsley Internat. Pic. Corp. v.

Regents, 360 U. S. 684 (79 SC 1362, 3 LE2d 1512), that a publication may not be held obscene merely because it is contrary to the legal code or moral standard of the community (if the elements comprising obscenity are not otherwise present) are pertinent generally to obscenity issues, and were not included in the charge as given.

*Judgment reversed and remanded for a new trial. Bell, C. J., Hall, P. J., Quillian, Evans, Clark and Stolz, JJ., concur. Eberhardt, P. J., and Pannell, J., dissent in part.*

EBERHARDT, Presiding Judge, concurring in the judgment, but dissenting in part. I concur in the judgment of reversal, and generally in what is said in Divisions 1, 3, 4, 5 and 6, but in view of the ruling in *Gornto v. State,* 227 Ga. 46 (5) (178 SE2d 894) that "the standard to be applied is not what may or may not have been held to be obscene in other jurisdictions, but what is acceptable in the local community," and in the light of the provision of our Constitution that the rulings made by the Supreme Court are binding on all other courts of this state and of our obligation to observe and follow the decisions of the Supreme Court, I must dissent to Division 2.

I know of no ruling of the Supreme Court of the United States which has specifically ruled to the contrary. I am informed that one or more appeals are now pending in that court wherein this very issue is made and thus we may soon have a definitive ruling on it. Rulings of that court are, of course, binding upon our Supreme Court, as well as upon us. I do not find the rulings in Roth v. United States, 354 U. S. 476 (77 SC 1304, 1 LE2d 1498) or Jacobellis v. Ohio, 378 U. S. 184 (3) (84 SC 1676, 12 LE2d 793) to be sufficiently definite or clear on this point to require a different holding than that made by our Supreme Court.