## 51930. GARMON v. DELTA AIR LINES, INC.

PANNELL, Presiding Judge.

The plaintiff brought suit against the defendant to recover for loss of consortium and for the wrongful death of her husband. Plaintiff's cause of action was based on the same incident involved in the case of *Delta Air Lines, Inc. v. Garmon,* 139 Ga. App. 146; however, the evidence presented upon the trial of this case and the issues involved herein were somewhat different. Upon the trial of this cause of action, the jury returned a verdict in favor of Delta Air Lines, Inc. The plaintiff appeals the judgment entered in favor of the defendant.

The evidence showed that plaintiff's decedent was a sprinkler fitter. On the morning of November 25, 1970, he was working at the Atlanta Airport in a passageway used by the airlines to haul luggage from the planes to the terminal and vice versa. He was standing on top of a scaffold drilling holes in the ceiling overhead. The scaffold was 12 feet high, 7 feet long, and 5 feet wide, and was painted bright orange; it was located in the center of the passageway in the middle of a curve. The passageway was approximately 42 feet wide. It was lighted with temporary lighting which consisted of a string of lights with 150 and 200 watt bulbs.

Mr. Wise, an employee of Delta Air Lines, Inc., operated a tug which carried luggage to and from the airplanes to the terminal. On the morning in question, he

testified that he had driven through the area where the scaffold was located on four separate occasions. On each of these trips, the overhead lights were on, and he saw men working in the passageway. He said that the scaffold was unoccupied and was located to one side of the roadway or the other. On his fifth trip through the area, Mr. Wise testified that the temporary lights were off and that the area was completely dark. He proceeded into the passageway approximately 100 feet and then struck the scaffold upon which Mr. Garmon was working. Mr. Garmon fell from the scaffold to the pavement, sustaining severe injuries.

Mr. Wise testified that he would have been able to see the scaffold if the overhead lights had been on. (There was conflicting testimony as to whether these lights were on at the time of the collision.) He said that he was unable to tell that the lights were not on upon first entering the passageway because he was driving into it from bright sunshine. There was also testimony that he was wearing sunglasses at the time, but Mr. Wise testified that he was not. Mr. Wise further testified that he did not have his headlights on, but that he would not have been able to avoid hitting the scaffold even if his headlights had been on; he said that the headlights would only illuminate 5 to 6 feet in front of the tug.

The installation of the sprinkler system, upon which Mr. Garmon was working, was part of an expansion of the Atlanta Airport. The general contractor for the airport expansion was McDevitt & Street. Grinnell Company was a subcontractor of a subcontractor of McDevitt & Street. Mr. Garmon was an employee of Grinnell Company. The supervisor for the general contractor, McDevitt & Street, testified that their architect had given specific instructions that any scaffolding located in tug traffic areas should be equipped with flashing lights. The foreman for Grinnell Company testified that he had never been informed of the architect's instructions regarding blinking lights.

There was also testimony that the standard practice in the construction industry required that any scaffolding *in a dark area* be well marked with flashers. The evidence showed that the passageway in question was lighted and

the scaffold was clearly made visible by this lighting; however, there was conflicting testimony as to whether these lights were ever *temporarily* out.

The collision between the tug and the scaffold occurred on November 25, 1970; Mr. Garmon died on July 23, 1973. The evidence showed that the immediate cause of death was myocardial failure. There was testimony that there was no permanent cardiac injury as a result of the deceased's fall. There was also testimony that Mr. Garmon had a history of coronary artery disease; and that stress, strain, and injury can aggravate heart disease. *Held:*

1. Appellant urges error in the trial court's failure to strike certain testimony of Mr. Wise, the driver of the tug. The following was part of the testimony elicited by defense counsel upon direct examination of Mr. Wise: "Q. How fast were you going? A. It was between eight and ten miles an hour. There is not a speedometer on the tug. That was just the governed speed; whether it actually hits ten miles an hour, I have no idea. But I know that it's not faster than that. Q. Assuming that your headlights were on, they were not? A. That is correct. Q. Would you have been able to see the scaffold? A. Would you repeat it? I'm not — Q. Assuming that your lights were on, you are familiar with the vehicle itself? A. Oh, yes, yes. Q. Would you have been able to see the scaffold? A. Yes, yes. Q. Would you have been able to stop? A. No, sir." Counsel for the plaintiff moved to strike this testimony on the ground that it was a conclusion and invaded the province of the jury.

Later, during further direct examination, Mr. Wise was asked the following question: "What could you have done to avoid the collision, Mr. Wise?" Plaintiff's counsel objected on the ground that the question invaded the province of the jury. The trial judge overruled the objection, and Mr. Wise answered: "At the time I saw the scaffolding or the silhouette of it, there was absolutely nothing I could have done to have avoided hitting it." Appellant contends that the court erred in allowing Mr. Wise to testify that he would have been unable to stop if he had had his lights on; and that there was nothing he could have done to avoid hitting the scaffold at the time he saw

it. She argues that this testimony was a conclusion and invaded the province of the jury.

"As was pointed out in the case of *Bentley v. Ayers,* 102 Ga. App. 733, 735 (117 SE2d 633), testimony to the effect that the witness doesn't *know* of anything he could have done to avoid a collision is construed to mean that insofar as the witness knew, his opinion was that there was nothing else he could have done, and such opinion is admissible when it is based upon facts concerning which he testified. On the other hand, testimony such as that here solicited calls for a conclusion on the part of the witness as to the ultimate issue to be decided, and thus would amount to an invasion of the province of the jury." *Hughes v. Brown,* 111 Ga. App. 676, 679 (143 SE2d 30). See also *Bailey v. Ga. R. &c. Co.,* 32 Ga. App. 793 (4) (124 SE 907); *Kirkland v. Wheeler,* 84 Ga. App. 352 (19) (66 SE2d 348).

We believe that the court erred in allowing the witness to testify that he *would not* have been able to stop if his lights had been on; and that there was nothing he could have done to avoid hitting the scaffold once he saw it. This testimony amounted to the witness' *conclusion* as to the ultimate issue to be decided and thus invaded the province of the jury.

2. Appellant urges error in the trial court's failure to charge the jury the plaintiff's contentions and specifications of negligence as set forth in her request to charge. The trial judge charged the jury in pertinent part as follows: "Now, you have heard counsel for plaintiff and counsel for defendant outline in their opening statements and in their final arguments the contentions of the respective parties. You have likewise heard the evidence in support of the contentions of the respective parties. The issues thus raised are therefore before you and I will not further elaborate upon the contentions of the parties."

In *Central of Ga. R. Co. v. McKinney,* 118 Ga. 535 (45 SE 430), the trial judge failed to state and explain the contentions of the parties in his charge. Rather, he charged the jury that the various acts of negligence alleged by the plaintiff were set forth in the pleadings. The Supreme Court found no grounds for new trial and reasoned as follows: "The really important thing is for the

judge to give the jury clearly and fairly the law applicable to the issues involved; and if he does this, his failure to formally state the contentions as shown by the pleadings will not, as a general rule, be cause for a new trial. [Cits.] The charge of the trial judge in this case fully, fairly, and lucidly stated the law applicable to the issues involved. It is not to be presumed that the jury were unable to understand the issues involved in the case as set forth in the pleadings, and it can not be said that the judge's omission to state more definitely the contentions of the parties resulted in any injury to the defendant." *Central of Ga. R. Co. v. McKinney,* supra, pp. 536, 537. See also *Jones v. McElroy,* 134 Ga. 857 (3) (68 SE 729).

In the present case, the trial judge charged the jury that plaintiff's contentions were outlined in his opening statement and closing argument to the jury. The judge then charged the jury on the law applicable to these issues. We cannot presume that the jury was unable to understand the issues as set forth by plaintiff's able counsel in his opening statement and closing argument; thus, we cannot conclude that the judge's failure to specifically set forth the plaintiff's contentions of negligence in his charge to the jury resulted in any injury to the plaintiff.

3. Appellant requested that the trial judge charge the jury that the negligence, if any, of Mr. Garmon's employer or co-workers could not be imputed to Mr. Garmon and was not a proper matter for their consideration. The trial judge failed to give the requested charge, and the appellant urges error in this failure.

We believe that the plaintiff was entitled to this charge under the facts of this case and that the failure to give the requested charge resulted in injury to the plaintiff's case. The judge gave the following charge to the jury: "If you find, Ladies and Gentlemen of the Jury, from the evidence in this case that Mr. Garmon was not in the exercise of ordinary care for his own safety and taking into consideration all the facts and circumstances surrounding the occurrence complained of and that such failure to exercise ordinary care on the part of Mr. Garmon was the sole proximate cause of the occurrence complained of, the plaintiff would not be entitled to

recover and it would be your duty to return a verdict in favor of the defendant." The evidence would have authorized a finding that Mr. Garmon's *employer* was negligent in failing to provide Mr. Garmon with a safe place to work and that such negligence was the proximate cause of his injuries. Such negligence would not be imputable to Mr. Garmon. See Code § 105-205. However, in the absence of plaintiff's requested charge, the jury could have concluded that such negligence was chargeable to the decedent, thereby providing a basis for denying recovery to the plaintiff under the terms of the above quoted charge. It is our opinion that the trial judge erred in refusing to give the plaintiff's request to charge to the effect that the negligence, if any, of Mr. Garmon's employer or co-workers could not be imputed to Mr. Garmon.

4. Appellant urges error in the court's failure to charge the jury on concurrent negligence. Appellant made no written request for such a charge; however, she argues that it was harmful as a matter of law for the court to refuse to give this charge and is therefore reversible error regardless of appellant's failure to request the charge. See Ga. L. 1965, pp. 18, 31; 1968, pp. 1072, 1078 (Code Ann. § 70-207 (c)). This case is being remanded for a new trial on other grounds. It is not necessary for us to decide if the court's refusal to give the above charge was harmful as a matter of law since it is unlikely that this particular situation will reoccur upon retrial of the case. Further, we cannot now decide if the evidence upon retrial of the case would authorize such a charge pursuant to a written request by appellant.

5. The court charged the jury in pertinent part as follows: "In order for the plaintiff to recover, it is necessary that the plaintiff prove by a legal preponderance of the evidence under the law as given you by the Court in charge that Mr. Garmon's death was proximately caused by the negligence of the defendant, if any." Two claims were presented for the jury's consideration: loss of consortium and wrongful death. Appellant contends that the above charge was error because it instructed the jury that they could not find in favor of the plaintiff on her claim for loss of consortium

unless they found that Mr. Garmon's *death* was proximately caused by the negligence of the defendant. We agree that the above charge was error for this reason. See generally *Smith v. Tri-State Culvert Mfg. Co.,* 126 Ga. App. 508 (191 SE2d 92). This charge was not given in connection with the court's charge on appellant's wrongful death claim and was not restricted to her right of recovery on this claim. Further, the remainder of the court's charge did not clear up any harm caused by the above charge. Although no objection to this charge was made at the trial, we believe that it was harmful as a matter of law and therefore requires the grant of a new trial on the claim for loss of consortium. See Ga. L. 1965, pp. 18, 31; 1968, pp. 1072, 1078 (Code Ann. § 70-207(c)).

6. Since this case is being remanded for new trial on other grounds, it is not necessary to decide if the court erred in refusing to grant a new trial on the general grounds.

*Judgment reversed. Marshall, J., concurs. Mc-Murray, J., concurs in the judgment only.*

ARGUED MARCH 1, 1976 — DECIDED MAY 19, 1976.

*Cullens, Neely, Freeman & Hawkins, J. R. Cullens, Paul M. Hawkins, William Q. Bird,* for appellant.

*Powell, Goldstein, Frazer & Murphy, Edward E. Dorsey, Daryll Love,* for appellee.