## 32802. DICKEY v. THE STATE.

HILL, Justice.

Following a change of venue to Bibb County, the defendant was convicted by a jury of the murder of Crawford County Deputy Sheriff Allen Kay O'Neal. The jury found that the offense of murder was committed against a peace officer while engaged in the performance of his official duties but recommended mercy to the court, and the defendant was sentenced to life imprisonment.

Several witnesses testified to encounters between the deputy sheriff and the defendant. One witness testified that three days before the shooting, the defendant had stated that as long as he lived he would have something against the deputy and would rather be dead than go back to jail. On the afternoon preceding the shooting, the victim had telephoned the Bibb County sheriff's office to request a recent photograph of the defendant from their files.

In the early morning hours of Tuesday, January 25, 1977, the body of the deputy sheriff was found on Highway 341 lying 45 feet in front of his patrol car with its blue light flashing. Medical testimony placed the time of death between midnight and 3 a.m. Death was caused by a bullet wound to the upper chest fired at close range from a .22 caliber pistol recovered from the scene. The deputy's pistol was found on the ground nearby. Two of his shirt buttons were found at the scene. Georgia Bureau of Investigation officials interviewed Arthur James Felton and Miller Sherman Fluellen who provided statements which resulted in the defendant's arrest and indictment for the murder of Deputy O'Neal.

At trial, Felton and Fluellen testified for the state. According to their testimony, on the Monday evening in

question, Fluellen, Felton and the defendant left in a car borrowed in Fort Valley intending to drive to Atlanta. They ran out of gas in Bibb County near Macon sometime between 8 and 9:30 p.m. and did not leave there for about two hours when they decided to go to the Paradise Club in Fort Valley (Peach County). From there, they went to Maine's Place in Roberta (Crawford County) where only the defendant went inside. Three witnesses testified to having seen the defendant inside Maine's Place on the night in question.

Fluellen, Felton and the defendant were "high on drugs" and resumed their trip toward Atlanta leaving Roberta on Highway 341. Fluellen was driving, Felton was asleep in the rear seat and the defendant was in the front passenger seat. A mile before they reached the Crawford County line, they were stopped by a patrol car. The defendant left the automobile alone, telling Fluellen he would "take care of them." After a few minutes, two shots were fired. The defendant ran back to the car and said, "Let's go, get the hell out of here." When asked why he shot the man, the defendant made no response. Defendant, Felton and Fluellen then drove from the scene to Atlanta where they stayed with relatives of Felton.

On cross examination, both Felton and Fluellen freely admitted having lied to defense counsel in separate interviews prior to trial. They were questioned at length about their prior statements in which they had denied being in the area the night of the shooting but claimed to have gone together directly to Atlanta earlier that evening.

The defendant testified he was not in Crawford County the night Deputy O'Neal was killed. He stated he was with Felton and Fluellen and that they had proceeded directly to Atlanta that evening without returning to Roberta. He maintained he first learned of Deputy O'Neal's death from newspaper accounts.

1. In accordance with Brady v. Maryland, 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963), the defendant filed a motion prior to trial to discover exculpatory evidence possessed by the prosecution. The defense specifically requested "All tape recordings of statements, written statements and reports of oral statements of James Arthur

Felton and Miller Sherman Flewellyn, which would tend to show that James Edward Dickey did not commit the offense charged, or which may be inconsistent with other statements made by them or either of them, or which may be considered to be impeaching in any way of their expected testimony."

The prosecution stated at the hearing on the motion that, other than his original claim of lack of knowledge, it had no statements in its files by Felton inconsistent with his anticipated testimony. The prosecution stated further that although Fluellen's original and subsequent statements to authorities were consistent to testimony anticipated at trial, he did change his story during one interview, and give a version consistent with the defendant's defense. It is contended the trial court erred by not requiring the prosecution to provide copies of the prior inconsistent statements made by Fluellen and Felton or erred by failing to conduct an in camera inspection to determine their exculpatory nature.

However, defense counsel independently had obtained and recorded statements by both witnesses which were inconsistent. At trial they admitted making such statements and were exhaustively cross examined concerning them. Even assuming that the state should have furnished the inconsistent statement or statements it had (*Rini v. State,* 235 Ga. 60 (218 SE2d 811) (1965)), such evidence would have been admissible only for the purpose of further impeachment of the witnesses (*Mathis v. State,* 210 Ga. 408 (80 SE2d 159) (1954); Code § 38-1803).

A defendant assigning error upon the denial of a "Brady motion" must do more than show suppression. Moore v. Illinois, 408 U. S. 786, 795-798 (92 SC 2562, 33 LE2d 706) (1972); *Hicks v. State,* 232 Ga. 393, 396 (207 SE2d 30) (1974); *Pryor v. State,* 238 Ga. 698, 706 (234 SE2d 918) (1977). See United States v. Harris, 458 F2d 670, 677 (5th Cir. 1972); United States v. Crow Dog, 532 F2d 1182, 1189 (8th Cir. 1976). A defendant assigning error upon the denial of a "Brady motion" and suppression of an inconsistent statement by a key prosecution witness must show that ". . . the suppressed evidence might have affected the outcome of the trial." United States v. Agurs,

427 U. S. 97, 104 (96 SC 2392, 49 LE2d 342) (1976).[1]

In the case before us, the state's two key witnesses were cross examined extensively as to their prior inconsistent statements to defense counsel. Cross examination based upon similar inconsistent statements to law enforcement officers would not have affected the outcome of the trial. Hence no reversible error has been shown.

2. The defendant enumerates as error the failure to disclose an alleged deal made between the district attorney and state's witnesses Felton and Fluellen for their testimony. A review of the transcript of the motion for new trial reveals no error.

It is true that at the time of this trial both Felton and Fluellen had a number of charges pending against them. At the hearing on the motion for a new trial, their attorney testified that the district attorney had specifically told him there would be no deal, but that if the investigation and their testimony showed they were not parties to the deputy's murder then they would not be prosecuted for it, that the district attorney would communicate with the other jurisdictions about their cooperation and that he would communicate with the Pardon and Parole Board when they came up before it.

The defense argues that because of the sentences the witnesses ultimately received and the fact that some charges were dropped, there was a deal that should have

---

[1] In United States v. Agurs, supra, the court discussed three categories of suppressed evidence. The present issue involves the second category. It should be noted that in each of the so-called "Brady cases" decided by the Supreme Court, that court had before it the material which had been suppressed at trial. Thus, it appears that, in order to show error on appeal based on suppression of evidence, the suppressed evidence must be made available to the reviewing court or, at a minimum, the fact of suppression must be shown. In both *Rini v. State,* supra, and the present case the state admitted the existence of the material sought by the defense. See also *Lundy v. State,* 139 Ga. App. 536 (1) (228 SE2d 717) (1976).

been disclosed to the defense. We find no evidence of a plea bargain existing at the time of the defendant's trial. "However, we cannot find, in the absence of other evidence, that such an agreement existed merely because of the subsequent disposition of criminal charges against these witnesses for the state." *Fleming v. State,* 236 Ga. 434, 438 (224 SE2d 15) (1976).

Moreover, Felton and Fluellen did not testify at trial that they had not received any inducement or promise from the state in exchange for their testimony. Hence there is no issue of perjured testimony here. See United States v. Agurs, supra, fn. 8. Defendant's "Brady motion" did not specifically seek information as to promises of leniency or inducements to testify made to Felton or Fluellen except generally as to "evidence of any kind favorable to the defendant." Hence, the second category discussed in Agurs, supra, a specific Brady request, is inapplicable here.

According to Agurs, where there is no specific Brady request and no inference of perjury (i.e., where there is only a general Brady request, or no request at all), the proper standard of materiality for judging the prosecutor's failure to voluntarily disclose is: If the omitted evidence creates a reasonable doubt that did not otherwise exist, constitutional error has been committed. 427 U. S. at 112 (96 SC at 2401-2402).

The omitted evidence in this case, the state's inducements to Felton and Fluellen to testify, do not create any doubt that did not otherwise exist. The jurors could not be unaware that these two witnesses hoped for leniency, whether or not it had been offered or discussed.[2] The jurors thus found this defendant guilty of murder notwithstanding their knowledge that the state's two principal witnesses were motivated in favor of the state. We find no reversible error in the state's failure to volunteer information as to the usual, minimal inducements made to these witnesses.

3. The defendant enumerates as error the court's refusal to allow in evidence defense counsel's taped

---

[2] See also Division 5.

interview with Fluellen.[3] Fluellen admitted making the statement which defense counsel taped and admitted signing a statement, both inconsistent with his trial testimony. He was cross examined extensively by defense counsel as to specific portions of his signed statement. Defense counsel then sought to introduce into evidence the taped interview but his offer was refused.

A witness' prior statement which is inconsistent on a material matter with his trial testimony is properly admitted into evidence to impeach his trial testimony. *Pistor v. State,* 219 Ga. 161 (2b) (132 SE2d 183) (1963); *Scott v. State,* 229 Ga. 541, 545 (192 SE2d 367) (1972); Code Ann. § 38-1803. As was noted in *Pistor v. State,* supra, the prior inconsistent statement becomes admissible when the witness denies having made such statement. When a witness admits unequivocally that he made a prior inconsistent or contradictory statement, he has thereby impeached himself and it is not error to exclude the prior written statement from evidence. *Pethel v. Waters,* 220 Ga. 543, 553 (140 SE2d 252) (1965); *Howard v. Howard,* 228 Ga. 760, 762 (187 SE2d 868) (1972). Fluellen admitted at trial having made the prior inconsistent statement which defense counsel taped and the trial court, therefore, did not err in excluding the taped interview.

4. The court did not err by refusing to admit into evidence the offered copy of a newspaper article concerning the death of Deputy O'Neal. The newspaper article constituted hearsay. *Sanders v. State,* 138 Ga. App. 774 (1) (227 SE2d 504) (1976); Code § 38-301. Moreover, it contained speculation by the sheriff and district attorney as to what might have occurred at the murder scene.

The defense sought to introduce the newspaper article to show that Felton and Fluellen had first learned

---

[3] The taped interview between Felton and defense counsel was admitted into evidence because, while being cross examined, Felton claimed he had been pressured by defense counsel into making that statement. The trial judge admitted the Felton tape to impeach the assertion made against defense counsel.

of the killing by reading about it. Because these witnesses had already testified that they had told defense counsel that they had read the article and that it constituted their source, the article was merely corroborative of their prior inconsistent statements. The statements themselves were not admissible except for purposes of impeachment (see Division 3 above) and the hearsay news article was rendered surplusage by the witnesses' admitting it was their alleged source of information. The court did not err in excluding it.

5. The defendant contends the trial court erred by allowing the district attorney to cross examine the defendant regarding an earlier robbery and by refusing to permit the defendant to claim the Fifth Amendment privilege as to that robbery.

After being advised of his rights, the defendant took the stand and testified in his own behalf. On cross examination he testified that on Wednesday following the murder, he discussed with Felton and Fluellen the making of an alibi phone call to Atlanta. In an apparent effort to explain this alibi conversation, the defense called Mr. Reynolds of Warner Robins in Houston County to testify that on the afternoon prior to the murder of Deputy O'Neal, he was robbed and shot by two males, whom he identified as Felton and Fluellen. The district attorney then recalled the defendant to question him regarding his prior statements to authorities admitting he was in the store at the time of the Warner Robins robbery. The defendant argues this cross examination concerning the prior robbery improperly placed his character into issue and that he should have been allowed to take the Fifth Amendment as to this other crime. We do not agree.

The cross examination of the defendant concerning his alibi conversations with Felton and Fluellen clearly was proper. As a result of this proper cross examination, the defendant chose to call Mr. Reynolds and introduce into this trial evidence as to an earlier armed robbery. The defendant argues, however, that in calling and examining Mr. Reynolds he did not put his character into issue.

Although evidence of an independent crime generally is not admissible, this rule is subject to many

exceptions (Agnor's Georgia, Evidence, § 10-7 (1976)), in addition to the "character in issue" exception (Agnor, supra, § 10-5). For example, proof of another crime is admissible when it is relevant to show motive, plan, identity, etc. (except general bad character). Agnor, supra, § 10-7. An accused "has no right to set forth to the jury all the facts which tend in his favor without laying himself open to a cross examination upon those facts." Fitzpatrick v. United States, 178 U. S. 304, 315 (20 SC 944, 44 LE 1078) (1899). In view of the sequence of events described above, we do not find that the trial court erred in allowing the defendant to be cross examined concerning this other crime.

The accused "has the choice, after weighing the advantage of the privilege against self-incrimination against the advantage of putting forward his version of the facts and his reliability as a witness, not to testify at all. He cannot reasonably claim that the Fifth Amendment gives him not only this choice but, if he elects to testify, an immunity from cross examination on the matters he has himself put in dispute." Brown v. United States, 356 U. S. 148, 155-156 (78 SC 622, 2 LE2d 589) (1958). Having here elected to testify, the defendant became obligated on cross examination to answer all proper and relevant questions. United States v. Brannon, 546 F2d 1242, 1246 (5th Cir. 1977). The trial court did not err in denying to the defendant the privilege not to incriminate himself.

6. The defendant sought to elicit testimony from a state's witness regarding a statement the defendant had made to the witness after the murder, to the effect that he had not killed Deputy O'Neal. Although the evidence showed that the defendant turned himself in to authorities, the court properly excluded evidence of his denial of guilt. Self-serving declarations made by a defendant are not admissible to explain his conduct. *Fann v. State,* 195 Ga. 176 (2) (23 SE2d 399) (1942); *Dennis v. State,* 216 Ga. 206 (5) (115 SE2d 527) (1960); *Smith v. State,* 143 Ga. App. 796 (1977). The defendant is allowed to declare his innocence in court; he is not allowed to avoid this opportunity by pre-trial declarations of innocence. The defendant cites *Bryant v. State,* 191 Ga. 686 (14) (13

SE2d 820) (1941), for the proposition that out-of-court conversations are admissible to explain conduct and ascertain motives under Code § 38-302, but the statements in *Bryant,* supra, were not self-serving declarations of the defendant.

The defendant enumerates as error the failure of the trial court to give certain requested charges on voluntary and involuntary manslaughter. This contention is without merit. The defendant's sole defense was that of alibi. The evidence presented was not consistent with either voluntary or involuntary manslaughter and the trial court did not err in refusing to so charge. *Cromer v. State,* 238 Ga. 425 (1) (233 SE2d 158) (1977); *Gillespie v. State,* 236 Ga. 845 (225 SE2d 296) (1976).

The defendant urges that the evidence that he pulled the trigger with malice aforethought was circumstantial only and that the circumstances were such that the defendant could have been guilty of voluntary or involuntary manslaughter (e.g., sudden provocation, resisting wrongful arrest, resisting excessive use of force in a lawful arrest). There simply is no evidence to support these hypotheticals whereas there was evidence that the defendant shot the victim with a .22 pistol at close range. The fact that the deputy's pistol was on the ground and the suggestion, from the missing buttons, that there had been a scuffle, do not give rise even to an inference of sudden provocation, unlawful arrest, etc.

The trial court did not err for any reason assigned. *Judgment affirmed. All the Justices concur.*

ARGUED OCTOBER 11, 1977 — DECIDED JANUARY 20, 1978 — REHEARING DENIED FEBRUARY 8, 1978.

*Brown, Katz & Flatau, S. Phillip Brown, Richard M. Katz,* for appellant.

*Walker P. Johnson, District Attorney, Willis B. Sparks, III, Assistant District Attorney, Arthur K. Bolton, Attorney General, William B. Hill, Jr.,* for appellee.