## 37460. THOMAS v. THE STATE.

SMITH, Justice.

Appellant, Eugene Thomas a/k/a "Pee Wee", was convicted for the October 28, 1979, malice murder of Olen Brantley. The jury found statutory and nonstatutory aggravating circumstances and sentenced appellant to death. The case is here both on direct appeal and for mandatory sentence review.

From the evidence presented at trial, the jury was authorized to

make the following findings of fact: In the early evening hours of October 28, 1979, in Macon, Georgia, appellant met one Greg Willis at Tattnall Square Park. Appellant approached Willis and told him that he knew somebody upon whom they could make a "hit." He asked Willis to be a lookout, and Willis agreed. Appellant had a gun in his pants. The two began to walk up Montpelier Avenue toward the victim's house. As they neared the house, Willis, who from the outset had been somewhat reluctant to participate, began to back out because he saw so many cars and people in the vicinity. Appellant accused him of being scared and began cursing him. Willis started to leave, but then turned back and acted as a lookout.

Appellant approached the window of the victim's home and peered inside. The victim, Olen Hudson Brantley, a seventy-year-old retired male, and his wife were preparing to leave for south Georgia the following day in order to attend a church meeting. Because they were leaving early the next morning, Mr. Brantley decided to put the trash out that evening. At approximately 9:15 p.m., he went to the receptacles near his home. Appellant sneaked up and grabbed him from behind. They struggled for a brief period of time. Appellant shot Brantley twice, once in the lower abdomen and once in the leg. He then took Brantley's billfold and fled with Willis. The victim was able to walk back to his front porch and told his wife that he had been shot twice by a young black male. Almost immediately thereafter, he lost consciousness. He died before emergency medical personnel could arrive. The cause of death was determined to be loss of blood due to the wound in the leg.

Two individuals, Larry Banks and Connie Davis, were standing on the corner of Montpelier smoking marijuana around the time of the shooting. Both of them knew appellant; neither knew Willis. They observed appellant and Willis going toward the victim's home. They heard the shots and, immediately after that, they saw appellant and Willis run across the street. They heard Willis ask appellant why he had to shoot the old man. They also observed appellant carrying a pistol in his hand at this time.

Appellant denied his participation in the crime and asserted that he was home the night of the murder watching television. Neither the wallet nor the gun was ever recovered.

1. The constitutionality of the Georgia death penalty statute has been upheld by the Supreme Court of the United States and by this court on each occasion that it has been attacked on constitutional grounds. *Thomas v. State,* 245 Ga. 688 (266 SE2d 499) (1980); *Collins v. State,* 243 Ga. 291 (253 SE2d 729) (1979) and cits. Appellant's first enumeration of error is without merit.

2. In his second enumeration of error, appellant contends that it

was error for the trial court to fail to suppress the statements of Greg Willis upon proper motion. Greg Willis was arrested and taken to police headquarters where, after being advised of his Miranda rights, he waived counsel and made a statement. Appellant argues that the statement of Willis was involuntarily made and should have been suppressed.

We find no error. The state did not introduce any statements of Willis at trial but placed him upon the stand and elicited direct testimony as to the events that occurred on the night of the crime. He was subject to extensive cross examination during which defense counsel himself brought out prior inconsistent statements made to authorities after his arrest. See *Stevens v. State,* 245 Ga. 583 (4) (266 SE2d 194) (1980). The eyewitness narration of the accomplice corroborated by two independent witnesses was properly admitted. *Hill v. State,* 239 Ga. 278 (236 SE2d 626) (1977).

3. Appellant, in his third enumeration of error, contends that the trial court erred in overruling his motion to void and quash the petit or traverse jury panel. He argues that there was an intentional and systematic exclusion of young adults, blacks and people of poor economic background from the list from which the jurors were selected. The evidence, however, showed that the list from which the jurors were drawn came from the voters list or city directory. Names were randomly picked by computer and they represented a proper cross-section of the community. The actual percentages shown were 27.7% black and 72.3% white. The percentage of blacks in the community from which the veniremen were chosen is 27%. The printout revealed that 52.3% of the veniremen on the list were female. Appellant offered no proof as to disparity with regard to young adults or people of poor economic background.

To make out a prima facie case of discrimination, the appellant must show: "(1) that a distinctive group or recognizable class in the community has been excluded from the jury list; (2) that an opportunity for discrimination against this group existed from the source of the jury list; and (3) that use of the infected source produced a significant disparity between the percentages found present in the source and those actually appearing on the jury panels." *Bowen v. State,* 244 Ga. 495, 500 (260 SE2d 909) (1979). Age is not a recognizable class for purposes of jury representation (Id. at 500) and appellant has failed to establish an impermissible disparity between percentages of blacks and women on the traverse panel and the source of those jurors in the population. This enumeration of error is without merit.

4. In his fourth enumeration of error, appellant asserts that the trial court erred in overruling his motion for sequestration of

potential jurors during voir dire questioning. He argues that a potential juror may be more frank and give candid answers and express his feelings more concisely if permitted to be questioned only in the presence of the trial judge and counsel. He further argues that a particular juror may unconsciously be conditioned as to what his responses should be on any particular issue by hearing the questions and answers propounded to and given by another juror.

It is well settled that the grant or denial of a motion for sequestered voir dire is within the sound discretion of the trial judge. *Whitlock v. State,* 230 Ga. 700 (198 SE2d 865) (1973). As no abuse of discretion has been shown, this enumeration of error is without merit. *Messer v. State,* 247 Ga. 316 (5) (276 SE2d 15) (1981); *High v. State,* 247 Ga. 289 (6) (276 SE2d 5) (1981).

5. Appellant asserts that the trial court erred in failing to grant his motion for change of venue based upon alleged substantial bias and prejudice in the community. Appellant cites no specific evidence in this regard and a search of the record reveals none. No evidence was presented on adverse pre-trial publicity *(Dampier v. State,* 245 Ga. 427 (265 SE2d 565) (1980)), and, in fact, only one of all the jurors examined during voir dire remembered reading anything about the case. No juror was excused for prejudice. We must conclude that the trial court did not err in failing to grant appellant's motion for change of venue. *Dick v. State,* 246 Ga. 697 (273 SE2d 124) (1980); *Green v. State,* 246 Ga. 598 (272 SE2d 475) (1980).

6. In his sixth enumeration, appellant asserts the trial court erred in giving the following instruction to the jury during the guilt-innocence phase of the trial: "The State, however, is not required to prove the guilt of the defendant beyond all doubt or to a mathematical certainty. Moral and reasonable certainty is all that can be expected in a legal investigation." Appellant argues, without citing authority, that this charge has "outlived its usefulness and is antiquated." He also contends that the charge is burden-shifting, and "substantially changes in the minds of the jurors the basic presumption of innocence."

Contrary to appellant's contentions, the charge is clearly not burden-shifting. It merely defines the degree of proof required of the State to carry its burden of proof. We note that the assertedly objectionable charge was given in connection with an instruction on the state's burden of proving the guilt of the accused beyond a reasonable doubt.

Appellant's remaining contention is also meritless. The fact that a particular charge has had long-standing acceptance *(Connell v. State,* 153 Ga. 151 (2) (111 SE 545) (1922)), does not render it antiquated. See *Payne v. State,* 233 Ga. 294 (210 SE2d 775) (1974);

*Schuh v. State,* 150 Ga. App. 700 (258 SE2d 328) (1979).

7. In his eighth enumeration of error, appellant contends that the trial court erred in excusing a potential trial juror under the principles of Witherspoon v. Illinois, 391 U. S. 510 (88 SC 1770, 20 LE2d 776) (1968). The prospective juror, when asked whether he would refuse to consider the imposition of the death penalty regardless of the evidence and instruction of the court, answered that he would. He stated that he was irrevocably committed before the trial began to vote against the penalty of death regardless of the evidence, facts and circumstances that might emerge during the course of proceedings. In response to further questioning, the potential juror told the court that his mind was already made up on the issue of the death penalty and that he would not vote to impose capital punishment on anyone.

Despite these responses, appellant argues that the venireman was improperly excused because at one point during questioning he stated that he would "consider" capital punishment if instructed to do so. However, the venireman immediately explained to the court that "I would think about it; and then I would quickly dismiss it from my mind." The statements of the venireman unequivocally show that he was irrevocably committed to vote against the imposition of capital punishment regardless of what appeared at trial. The juror was properly excused under Witherspoon v. Illinois, supra, and Lockett v. Ohio, 438 U. S. 586 (98 SC 2954, 57 LE2d 973) (1978). See *Blankenship v. State,* 247 Ga. 590 (277 SE2d 505) (1981).

8. A state's witness, Larry Banks, failed to appear after being properly subpoenaed. He was arrested and committed to jail under a defaulting witness proceeding. After he testified for the state, defense counsel closely cross examined the witness about his default under the subpoena and as to whether he was, at that time, lodged in the county jail. Upon the prosecution's request and over objection of counsel, the court then instructed the jury as to the law of defaulting witnesses. The court stated: "That's the Georgia Code Section that provides that when it appears that a witness may not be present in court pursuant to his subpoena, they will be remanded to jail in lieu of bond to secure their appearance . . . and that's simply the procedure that's involved. It's no moral turpitude attaches."

Appellant objects to the trial court's use of the phrase "no moral turpitude attaches." He argues that "[s]uch a remark by the court could have conveyed to the jury the impression that . . . [the] witness' testimony was entitled to credibility as a matter of proven fact."

We must disagree. The trial court's statement that "no moral turpitude attaches" was made in connection with its explanation of the defaulting witness procedure. When viewed in conjunction with

the court's charge on impeachment, it is clear that the use of the phrase was merely an attempt to inform the jury that the witness' detention was not the product of a "crime of moral turpitude" and that he was not unworthy of belief simply because the defaulting witness procedure had been invoked. "We do not see this as a comment on the credibility of the witness." *McNeese v. State,* 236 Ga. 26, 28 (222 SE2d 318) (1976).

9. In his ninth enumeration of error, appellant contends that the district attorney improperly injected his character into evidence. In attempting to elicit an answer from appellant during cross examination, the district attorney stated: "I'm talking about before you were charged with this murder and you were out in Crawford County cavorting around; do you remember that? Do you remember when they were letting you out of jail on furloughs?" He also questioned appellant about a previous purse-snatching incident. At the close of the testimony, appellant objected and moved for a mistrial or, in the alternative, for an order that all the testimony be stricken and curative instructions to the jury. The trial court struck the testimony and gave lengthy curative instructions.

We may assume, for the purposes of the instant appeal that appellant has not waived his objection by failing to raise it at the time the assumedly improper questions were asked. For, in our view, the trial court's curative action was sufficient. We note that, during direct examination, appellant himself referred to his incarceration in the Crawford County jail. On cross examination, he raised the purse-snatching incident. See *Gravitt v. State,* 239 Ga. 709, 712 (239 SE2d 149) (1977).

10. In his tenth enumeration of error, appellant contends that the trial court erred in refusing to admit statements he made to the arresting officer. The statements were excluded on hearsay grounds.

After his arrest, appellant was informed by authorities that Greg Willis had been arrested and had indicated that appellant pulled the trigger. Defense counsel asked the witness who had interviewed appellant to state what appellant said when he was apprised of Willis' remarks. The state objected on the grounds that the question called for a self-serving declaration and counsel withdrew the question. Counsel then proceeded to ask the same question in another manner and the objection was sustained.

Appellant argues that, since the confession of a defendant can be admitted against him, so can other statements made to police officers. He cites no authority for this proposition. In any event, self-serving declarations made by a defendant are not admissible. *Dickey v. State,* 240 Ga. 634 (6) (242 SE2d 55) (1978).

11. After the jury began its deliberations on the guilt-innocence

phase of the trial, appellant attempted to enter a plea of guilty but still maintained that he did not shoot the victim. The plea was not accepted. Thereafter, appellant again attempted to enter a plea of guilty without maintaining his innocence, but the plea was never accepted by the court for reasons unknown. A guilty verdict was returned by the jury.

In cross examining appellant during the sentencing phase of the trial, the district attorney asked him to admit his guilt. Appellant maintained his innocence. The district attorney then cross examined appellant about his attempted plea of guilty. Appellant, while admitting that he pled guilty, reiterated that he was going to tell the judge that he didn't really shoot the man. The district attorney then placed the son of the victim upon the stand, who testified that he heard appellant plead guilty in open court the night before.

In his eleventh enumeration of error, appellant contends that it was error for the district attorney to place the attempted guilty plea into evidence during the sentencing phase of the trial. We must agree. Code Ann. § 27-1404 clearly prohibits the fact of a former plea of guilty being entered into evidence against the defendant upon his trial. The sentencing portion of a capital felony trial has been held by this court to be a trial within itself. *Fair v. State,* 245 Ga. 868 (8) (268 SE2d 316) (1980).

While a defendant stands before the jury in the punishment phase of a capital felony prosecution as a convicted capital felon, this does not mean that any and all evidence may be introduced against him in order to obtain a death penalty. *Fair v. State,* supra. The evidence relating to the guilty plea could have prejudiced appellant. We are unable to say it is highly probable that the error did not contribute to the judgment. See *Mathis v. State,* 145 Ga. App. 754 (245 SE2d 41) (1978). *Ward v. State,* 123 Ga. App. 216 (180 SE2d 280) (1971). Accordingly, the sentence of death is reversed and the case is remanded for retrial as to sentencing.

12. The remaining enumeration of error deals with the alleged arbitrariness of the death sentence and will not be addressed in view of our holding in Division 11.

*Judgment affirmed in part; reversed in part and remanded. Hill, P. J., Marshall, Clark and Gregory, JJ., concur. Jordan, C. J., dissents to Division 11.*

DECIDED SEPTEMBER 30, 1981.

*Harry F. Thompson,* for appellant.
*Willis B. Sparks III, District Attorney, Graham A. Thorpe, Thomas J. Matthews, Assistant District Attorneys, Arthur K.*

*Bolton, Attorney General, Mary Beth Westmoreland, Assistant Attorney General,* for appellee.