## 72125. ALLISON v. THE STATE.
(346 SE2d 380)

POPE, Judge.

Richard Hugo Allison appeals from a jury verdict and judgment of conviction on one count of child molestation. *Held*:

The trial evidence showed that appellant and his ex-wife had been divorced for three years. There were two daughters, ages seven and fourteen, as issue of that marriage. Their mother was awarded custody and appellant regularly exercised overnight visitation privileges on alternate weekends. The visits took place at his parents'

home, where he also resided. The seven-year-old is the alleged victim.

The victim testified that on an unknown number of occasions (the number varied considerably with various recitations of the events) appellant would take her from the bedroom in which she slept with her sister into his bedroom where they would watch television and play "bad games." Using anatomically correct male and female dolls, the victim demonstrated that appellant was nude when these events occurred, that he would take her hand and place it on his penis, and that he would thereafter ejaculate. She was told by her father never to tell anyone, "otherwise, he'll rearrange my mother's face."

Appellant's ex-wife told the victim's pediatrician that appellant slept with the child while nude during his visitation weekends. The doctor became suspicious of possible sexual child abuse and referred the matter to the Cobb County Department of Family and Children Services (DFACS). In a tape-recorded interview with a DFACS social worker, the victim described her father's conduct, at first claiming that the contact of her hand on his penis was accidental, but later stating that he took her hand and caused her to touch him. Following that interview, the matter was referred by DFACS to the police and the instant indictment was subsequently returned.

A friend of the girls testified that she spent the night at appellant's home along with his two daughters on at least twelve occasions. She stated that she awoke one night, went to appellant's bedroom door and saw the victim sit up in bed calling her sister's name. She also observed appellant and was able to tell that he was not wearing any clothes.

Appellant testified that the divorce from his former wife was initially amicable, but that their relationship deteriorated just prior to her remarriage two years ago. He denied ever forcing the victim to sleep in his bed with him and claimed never to have been nude in the child's presence. Appellant denied the allegations of child abuse. He testified that he believed the victim was "very mistaken" and attributed the child's claims to his poor relationship with her mother. His defense at both trials was that the act of child molestation had not occurred and that the victim was "coached" into creating her story. When asked whom he thought was coaching the child, appellant responded, "My ex-wife."

At the conclusion of the defense case, the State sought to call a series of rebuttal expert witnesses consisting of Dr. Braga, a college professor in the field of behavioral sciences, Ms. Aldridge, a child therapist, and Dr. Stark, a clinical psychologist. The purpose of their testimony was to explain the characteristics of "child sexual abuse accommodation syndrome," which the State sought to prove as an identifiable pattern of behavioral characteristics typically exhibited by sexually abused children.

Over objection, the testimony was ruled admissible. The first witness, whose expertise was unchallenged, explained that the syndrome is a pattern of behavior that is exhibited by children who have been the victims of sexual abuse. Five typical behavioral characteristics were identified: (1) secrecy (children are usually not forthcoming with disclosure); (2) helplessness (the child feels he or she can do nothing to prevent the abuse); (3) accommodation (the child attempts to rationalize or accommodate the abuse, e.g., by pretending to be asleep); (4) delayed, conflicting and unconvincing disclosure (the child may at first give information that makes no sense or may be unconvincing); (5) recantation (if disclosure causes disruption in the child's life, he or she may recant an earlier story).

Dr. Braga testified that further indicia of the syndrome are nightmares, regressive behavior, body drawings containing exaggerated or incomplete appendages and pseudomature behavior. He was then asked to assume hypothetically that a child showed the following characteristics: (1) bright student with low school performance; (2) failure to reveal the abuse for a long period of time; (3) aggressive behavior; (4) some confusion in recounting the abusive conduct; (5) pseudomature behavior; (6) knowledge of sex beyond her age; (7) nightmares; and (8) bedwetting. When asked whether a child exhibiting such behavior should be diagnosed as suffering from child sexual abuse accommodation syndrome, the witness responded, "Absolutely."

The next rebuttal witness was Ms. Aldridge, a family therapist who works primarily with sexually abused children. Over objection, the witness was qualified as an expert in child therapy. The victim had been referred to the therapist by the district attorney's office, and she has since had 16 therapy sessions with the child. She described the child's behavior as aggressive, pseudomature; a bright underachiever who has more information about sexual behavior than the average seven-year-old. Her drawings reflect helplessness, anger and are remarkable in that the body limbs are omitted.

The third witness was qualified as an expert in clinical psychology. He met with the victim on two occasions at the request of her counselor. A battery of psychological tests was administered and based upon those results as well as upon his observations of the child and discussions with the child's counselor, the witness stated that in his professional opinion the "girl does definitely appear to fall into that syndrome. . . . In my professional opinion, she has been sexually abused." Thereafter, the jury returned a verdict of guilty.

1. Appellant enumerates as error the admission into evidence of expert testimony as to child sexual abuse accommodation syndrome. We acknowledge that this issue is one of first impression in our appellate courts and we commend both parties for their thorough research

and briefing. Through the testimony of Dr. Braga, the State explained that child sexual abuse accommodation syndrome has been identified as a pattern of behavior that is typically exhibited by children who are victims of sexual abuse. Children who have been sexually abused demonstrate significantly distinct characteristics from normal children or children who suffer from different emotional disorders. Dr. Braga cited to several authorities who had published treatises in this area, and also to studies published by the U. S. Department of Health and Human Services and the Institute of Human Development. He gave extensive testimony as to the identifiable characteristics of the abuse syndrome.

In *Smith v. State*, 247 Ga. 612 (277 SE2d 678) (1981), our Supreme Court decided whether expert testimony concerning the "battered woman syndrome" should have been admitted at trial. The court determined that "[e]xpert opinion testimony on issues to be decided by the jury, even the ultimate issue, is admissible where the conclusion of the expert is one which jurors would not ordinarily be able to draw for themselves; i.e., the conclusion is beyond the ken of the average layman. [Cits.]" *Smith*, supra at 619. Thus, a woman who killed her boyfriend and claimed self-defense, may, as evidence of whether she acted in fear of her life, have an expert describe the "battered woman syndrome," apply that to the facts and conclude that the woman falls within the profile. In *Smith* the court also observed that it is permissible for the State to offer expert opinion testimony that a child is a victim of "battered child syndrome" and that its injuries were not accidental. Id. at 617.

In *Sanders v. State*, 251 Ga. 70 (303 SE2d 13) (1983), the court considered whether expert testimony was permissible with regard to the "battering parent syndrome." The court held that "unless a defendant has placed her character in issue or has raised some defense which the battering parent syndrome is relevant to rebut, the [S]tate may not introduce evidence of the syndrome, nor may the [S]tate introduce character evidence showing a defendant's personality traits and personal history as its foundation for demonstrating the defendant has the characteristics of a typical battering parent." *Sanders*, supra at 76.

More recently, a child psychologist testified at a hearing on a petition to terminate parental rights that child abuse experts recognize and classify certain persons as "lethal parents" in order to predict child-abusive behavior. After identifying the recognized characteristics and applying those to the parent, the witness testified that it was probable the child would be a target for the parent's abuse. *In the Interest of D. S.*, 176 Ga. App. 482, 484 (336 SE2d 358) (1985). This court was not required to reach the acceptability of the "lethal parent" analysis as it concluded that there was sufficient additional evi-

dence to terminate parental rights exclusive of that testimony.

The above cases involve analogous issues decided by our appellate courts. Since the question now before us is one of first impression, we also look to the authority of other jurisdictions which have considered the admissibility of evidence of child sexual abuse accommodation syndrome.

In *State v. Middleton*, 657 P2d 1215 (294 Or. 427) (1983), the court upheld the admission of expert testimony regarding the typical response of a sexually abused child. It was noted that there are patterns of victim behavior specific to the crime of familial sexual child abuse which may reliably explain conduct seemingly at odds with behavioral norms. The court recognized that testimony concerning the ultimate issue in the case was not inadmissible solely on that basis as the jury alone must make the final decision. The expert testimony was significant in "[e]xplaining this superficially bizarre behavior by identifying its emotional antecedents [to] help the jury better assess the witness's credibility." *Middleton*, supra at 1220. Neither expert expressed an opinion as to the truthfulness of the victim's testimony.

In *State v. Myers*, 359 NW2d 604 (Minn. 1984), the defendant was tried for criminal sexual conduct with a seven-year-old girl. He denied the allegations, claiming that the child fabricated the story. In affirming the admission of the testimony of a psychologist concerning characteristics typically observed in sexually abused children, the question posed by the court was whether the testimony would assist the jury in resolving the factual questions presented. Since the average juror has no experience with child sexual abuse, the court concluded that an explanation of the emotional factors of the victim's conduct can assist the jury in evaluating the child's credibility. "In the case of a sexually abused child consent is irrelevant and jurors are often faced with determining the veracity of a young child who tells of a course of conduct carried on over an ill-defined time frame and who appears an uncertain or ambivalent accuser and who may even recant. Background data providing a relevant insight into the puzzling aspects of the child's conduct and demeanor which the jury could not otherwise bring to its evaluation of her credibility is helpful and appropriate in cases of sexual abuse of children, and particularly of children as young as this complainant. [Cits.]" *Myers*, supra at 610.

Other courts have upheld the admissibility of similar expert testimony in child sexual abuse cases. See, e.g., *In the Matter of Michael G.*, 492 NYS2d 993 (129 Misc.2d 186) (1985); *State v. Carlson*, 360 NW2d 442 (Minn. App. 1985); *People v. Benjamin R.*, 481 NYS2d 827 (103 A.D.2d 663) (1984); *State v. Kim*, 645 P2d 1330 (Hawaii 1982). Courts that have rejected expert testimony as to child sexual abuse accommodation syndrome have done so on procedural or factual grounds; the scientific theory itself was not criticized. In *Bussey*

*v. Commonwealth,* 697 SW2d 139 (Ky. 1985), the court found that expert testimony was improperly admitted because there was evidence that the child victim may have been abused by persons other than the defendant. Therefore, the symptoms she exhibited may not have been directly attributable to him. See also *State v. Fitzgerald,* 694 P2d 1117 (39 Wash. App. 652) (1985) (expert testimony disallowed for failure to lay proper foundation).

In *Harper v. State,* 249 Ga. 519 (1) (292 SE2d 389) (1982), the court enunciated the standard by which a new scientific principle or technique may be verified with such certainty that it is competent evidence in a court of law. "[I]t is proper for the trial judge to decide whether the procedure or technique in question has reached a scientific stage of verifiable certainty. . . . The trial court may make this determination from evidence presented to it at trial by the parties; in this regard expert testimony may be of value. Or the trial court may base its determination on exhibits, treatises or the rationale of cases in other jurisdictions. [Cits.]" Id. at 525.

Having reviewed the testimony of the three expert witnesses, as well as the case authority and treatises (most of which were cited to the trial court), we find that the trial court was authorized to conclude that numbers of children who are victims of sexual abuse tend to respond to the assault with the same patterns of superficially bizarre behavior, which are seemingly at odds with behavioral norms. We are persuaded that this information is not known to the average juror, and that the expert's explanation is one which jurors would not ordinarily be able to draw for themselves. *Smith,* supra. Therefore, we hold that expert testimony regarding child sexual abuse accommodation syndrome is properly admissible in appropriate cases. However, following the teachings in *Sanders,* supra, the State may not utilize the child sexual abuse profile as an affirmative weapon unless the defendant has placed his character in issue or raised some defense to which the syndrome is relevant. Here the trial court followed the Supreme Court's guidelines of *Harper, Sanders* and *Smith* and properly admitted the expert testimony as to child sexual abuse accommodation syndrome.

2. Appellant claims the trial court erroneously allowed the experts to testify in rebuttal. He contends that the testimony was improper rebuttal testimony, and that the State failed to supply him with the names of the witnesses pursuant to his timely demand under OCGA § 17-7-110. While we agree with appellant that out of a sense of fairness, the State could have anticipated his defense (as it was essentially the same defense presented at a previous trial which had ended in mistrial when the jury was unable to agree on a verdict) and supplied him with the names of the three "rebuttal" witnesses, we do not find that failure to do so resulted in error.

Initially, the State correctly points out that the testimony was proper rebuttal testimony as it was introduced after the victim's credibility had been attacked in order to rebut claims that she concocted the story and was coached by her mother. Also, it is not error to call unlisted witnesses in rebuttal in a criminal trial. *Gibbons v. State*, 248 Ga. 858, 865 (286 SE2d 717) (1982). In any event, the trial court provided appellant with time to interview the witnesses and to obtain his own expert if he desired. Appellant requested only a brief recess. Even if a violation of OCGA § 17-7-110 had occurred, a proper remedy would be a continuance, which was offered to appellant. See *Butler v. State*, 139 Ga. App. 92 (1) (227 SE2d 889) (1976). When the trial court allows a defendant an opportunity to interview unlisted witnesses, the purpose of OCGA § 17-7-110 is satisfied. *White v. State*, 253 Ga. 106 (3) (317 SE2d 196) (1984).

3. Appellant further contends that the court erroneously qualified Ms. Aldridge as an expert in child therapy. The witness' expertise was gained primarily through experience, having counseled more than 600 children, although her formal education was in related disciplines. An expert witness has peculiar knowledge concerning a science or skill gained through education, training or experience. *Tifton Brick &c. Co. v. Meadow*, 92 Ga. App. 328 (1) (88 SE2d 569) (1955). After reviewing the witness' qualifications, we find that the trial court properly exercised its discretion in qualifying her as an expert in child therapy. Accord *Morris v. State*, 159 Ga. App. 600 (1) (284 SE2d 103) (1981).

4. During the State's case-in-chief appellant attempted to ask the investigating officer on cross-examination whether appellant had denied the allegations against him at the time of his arrest. The court sustained an objection by the State, disallowing the testimony as a self-serving declaration. Appellant now contends that he was denied a fundamentally fair trial because the victim's out-of-court statements concerning his guilt were told to the jury through the testimony of her pediatrician and in the taped interview with the DFACS social worker. Appellant contends that the rule as to self-serving statements should apply equally to both sides.

The long established rule is that self-serving declarations made by a criminal defendant are hearsay and not admissible as evidence. *Thomas v. State*, 248 Ga. 247 (10) (282 SE2d 316) (1981); *Dickey v. State*, 240 Ga. 634 (6) (242 SE2d 55) (1978); *Fann v. State*, 195 Ga. 176 (2) (23 SE2d 399) (1942). "The defendant is allowed to declare his innocence in court; he is not allowed to avoid this opportunity by pre-trial declarations of innocence." *Dickey*, supra at 641. Conversely, a voluntary incriminating statement or confession by a criminal defendant is admissible as an exception to the hearsay rule. Agnor's Ga. Evid., §§ 11-7 and 11-13 (1976). This seemingly harsh dichotomy may

be explained thusly: " 'The admissibility of an admission [or incriminating statement or confession] made by the party himself rests not upon any notion that the circumstances in which it was made furnish the trier means of evaluating it fairly, but upon the adversary theory of litigation. A party can hardly object that he had no opportunity to cross-examine himself or that he is unworthy of credence save when speaking under sanction of an oath.' " McCormick on Evidence, § 262 at 628-29 (2d ed. 1972).

In any event, over objection by the State, appellant's counsel was ultimately permitted to introduce the declaration of innocence to the officer through appellant's own testimony, thereby assuring the State the opportunity for cross-examination. If instead, the trial court had allowed the evidence during the State's case-in-chief, and thereafter the accused elected not to testify, there would have been no opportunity to cross-examine him concerning the exculpatory statement. Here the evidence was put before the jury and neither party was prejudiced by its admission. This enumeration of error is without merit.

5. Appellant cites as error the court's failure to give two requests to charge. Appellant requested that the court charge, "If two reasonable interpretations may be made of a criminal statute, one which is consistent with the defendant's innocence, it would be your duty to interpret the law so that the defendant will be found not guilty." He claims that the victim gave conflicting testimony, at one time stating that the alleged act was accidental; therefore, the charge was authorized.

The two equal theories charge is applicable where only circumstantial evidence is involved. *Hill v. State*, 159 Ga. App. 589 (2) (284 SE2d 92) (1981); *Kreager v. State*, 148 Ga. App. 548 (252 SE2d 1) (1978). Such was not the case here where there was direct evidence through the testimony of the victim.

Finally, we find no authority for appellant's contention that the court should have charged that the existence of a "general plan" of sexual gratification is an element of OCGA § 16-6-4.

*Judgment affirmed. McMurray, P. J., concurs. Carley, J., concurs specially.*

CARLEY, Judge, concurring specially.

I concur in the judgment of the majority and agree with what is said in Divisions 1, 3, 4, and 5 of the majority opinion. With regard to Division 2, I must agree with the final conclusion that because the appellant did not request a continuance, the questionable tactics of the State in this case do not require a reversal of the conviction. However, I do not believe that the testimony of the three thoroughly prepared, highly educated, and extensively specialized expert witnesses

can be classified correctly as "rebuttal" testimony in view of the factual and procedural scenario in this case. As the majority observes, "out of a sense of fairness, the State could have anticipated his defense . . . as it was essentially the same defense presented at a previous trial. . . ." (Majority opinion, page 308.) Furthermore, even without the history of the first trial, I am fearful of placing the judicial stamp of approval upon prosecutorial sandbagging by calling this testimony "rebuttal." The majority's rationale would allow the State to bring in such high-powered "rebuttal" defense in almost any case unless the defendant offered no defense. I say this because, in any case in which a defendant denies the essential elements of the crime, the State can contend that the defendant had in effect "attacked" the credibility of the State's witnesses.

Even if, technically, the State could properly claim its expert evidence to be "rebuttal," allowing the admission of that evidence in this case solely on that ground would place form over substance to the prejudice of the defendant. "A specious and empty compliance with the formalities of law which results in the withholding of that which the spirit of the law seeks to grant cannot be countenanced." *Fishman v. State*, 128 Ga. App. 505, 511 (197 SE2d 467) (1973). However, after the recess granted by the trial court to appellant for the purpose of interviewing the State's witnesses, no motion for a continuance was made. *Davis v. State*, 135 Ga. App. 203 (217 SE2d 343) (1975); *Hunnicutt v. State*, 135 Ga. App. 774, 775 (219 SE2d 22) (1975). The denial of such a motion — even if made — would be reversible on appeal only if the denial constituted abuse of discretion. However, I must opine that under the circumstances present in this case, the denial of a motion for continuance would constitute an abuse of discretion. Nevertheless, since no continuance was requested, I concur in the judgment affirming the conviction.

DECIDED MAY 22, 1986 —
REHEARING DENIED JUNE 6, 1986 —

*William T. Hankins III*, for appellant.
*Robert E. Wilson, District Attorney, J. Tom Morgan, Susan Brooks, Assistant District Attorneys*, for appellee.