S92A1013. MOBLEY v. THE STATE.
(426 SE2d 150)

SEARS-COLLINS, Justice.

This is an interim appellate review of a case in which the state seeks a death sentence. See OCGA §§ 17-10-35.1 and 17-10-35.2. An earlier trial ended in a mistrial. Mobley contends, inter alia, that a retrial would violate his double jeopardy rights.

1. On February 17, 1991, the manager of a pizza store in Hall County was shot to death and the store robbed. On March 13, 1991, Investigator Head of the Hall County Sheriff's Department and a GBI agent interviewed Mobley about the crime. During that interview, Mobley made a voluntary, oral confession. Later in the same interview, Mobley dictated a written confession. Mobley again gave oral statements on March 14 and March 15. Head wrote his own summaries of each of Mobley's oral statements. Mobley was allowed to review the dictated version and make corrections, but did not review the investigator's summaries of the oral statements. Both Head's summaries and Mobley's written statement were provided to defense counsel before trial.

During Mobley's trial, Investigator Head, while purportedly recounting verbatim the oral confession which Mobley made before his written confession, testified that Mobley stated, "Well, [the victim] could identify me, he saw me, he could identify me, and I knew at that point I had to kill him." That quote was not part of the written statement that had been provided to defense counsel. At the conclusion of the state's direct examination, defense counsel advised the

court that they could not locate the quote in the material provided to them. Since it was time to recess for the evening anyway, the court postponed the defendant's cross-examination until the next day. After the court adjourned, the district attorney conferred with Head and informed defense counsel that the reported quote had not been made by the defendant. Rather, it was Head's "interpretation" of what Mobley had said.

The next day, Head testified outside the presence of the jury that the quote attributed to Mobley had been Head's interpretation of the following portion of Mobley's written confession:

> I kept peeking around the front, looking out for cars. I saw a headlight shining in the store. I knew I had to get out quick. The car appeared to be just turning in the parking lot. The guy I was robbing turned around and looked at me. I said 'don't look at me, face the wall.' I pointed the gun up in his direction and turned my head away and fired.

Head told the trial judge that attributing his own interpretation as a direct quote from the defendant was an unintentional mistake on his part.

The trial court granted Mobley's motion for a mistrial, finding that

> there has been very little genuine dispute about guilt or innocence in this case, at least as far as the alleged offense of felony murder is concerned. What has been very much at issue is whether the defendant would be convicted of malice murder, and if convicted of malice murder whether the death penalty would be imposed by the jury.

The trial court found that the quote made by Head and attributed to Mobley had no basis in Mobley's written statement, and that because it would bear directly on the jury's decisions regarding malice aforethought and whether to impose the death penalty, the misquote went "to the very heart and soul of this case . . . [and had] put an influence before this jury that can't be removed."

Mobley filed a plea of double jeopardy based upon a charge of prosecutorial misconduct, claiming that the district attorney knowingly allowed the use of false testimony to go uncorrected, goading Mobley into moving for a mistrial. The trial court denied the plea, finding that Investigator Head "did not act intentionally in his testimony" and that there was no intention by the prosecutor to goad Mobley into seeking a mistrial. The trial court ruled that Mobley could be retried. We agree.

The general rule is that where a mistrial is granted at the behest

of the defendant, a retrial is not barred by principles of double jeopardy unless " 'the governmental conduct in question is intended to "goad" the defendant into moving for a mistrial.' " *Fugitt v. State*, 253 Ga. 311, 315-316 (319 SE2d 829) (1984) (quoting from *Oregon v. Kennedy*, 456 U. S. 667, 675-676 (102 SC 2083, 72 LE2d 416) (1982)). The trial court found, and the defendant apparently concedes, that Head made an inadvertent mistake and did not intentionally or maliciously testify falsely. Mobley argues, however, that because the state waited until after Mobley's attorney questioned Head's testimony to correct it, the state's conduct must be penalized by barring a retrial. We disagree. It is true that the prosecutor has a duty to correct false evidence, and the sooner the better. But the prosecutor did reveal Head's error the evening of the day it occurred (albeit after the defense raised the issue). Even where false testimony was not discovered until after a *conviction*, "retrial has not been held to be barred by the Double Jeopardy Clause. [Cits.]" *Williams v. State*, 258 Ga. 305, 312 (369 SE2d 232) (1988). The state's conduct was properly penalized by the grant of a mistrial. There is no double jeopardy bar to a retrial.

2. Mobley contends Latinos are underrepresented on jury lists in Hall County. However, he has not established with any degree of accuracy the number of Latinos on the jury lists.[1] Thus he has not proved any significant underrepresentation of Latinos. See *Hicks v. State*, 256 Ga. 715 (7) (352 SE2d 762) (1987).[2]

3. The trial court did not err by denying Mobley's motion to exclude testimony about the defendant's oral statements. *Kelley v. State*, 160 Ga. App. 343 (3) (287 SE2d 68) (1981).

4. Mobley offered to plead guilty in exchange for a life sentence. The state refused to accept this offer.[3] Now Mobley wants to introduce evidence at the sentencing phase that he offered to plead guilty but that the state refused the offer. The state objects because it will not be able to tell the jury that one reason it opposed the plea was the possibility that Mobley might be released on parole if not sentenced to death. OCGA § 17-8-76.

We have held that a state may not use against a death-penalty defendant his unsuccessful attempt to plead guilty, see *Thomas v. State*, 248 Ga. 247 (11) (282 SE2d 316) (1981), and we have held that the defendant may not present evidence the state offered a life sen-

---

[1] According to the defendant's evidence, there are only 16 identifiably Latino surnames on the jury list. We note that many Latinos do not have identifiably Latino surnames, including two of the defendant's own witnesses, Latinos with surnames Anderson and Norton.

[2] We note, however, that the exclusion of Latinos could not be justified merely on the ground that Rule II (A) (6) of the Unified Appeal Procedure has been complied with. See *Cook v. State*, 255 Ga. 565, 570-571 (340 SE2d 843) (1986).

[3] There is no issue in this case about the court's power to accept a guilty plea and impose a life sentence over the state's objection.

tence but withdrew the offer. *Davis v. State*, 255 Ga. 598 (24) (340 SE2d 869) (1986). In the former situation, use of a withdrawn plea against the defendant is precluded by OCGA § 17-7-93. In the latter situation, allowing the defendant to use the state's withdrawn offer would "deter or preclude plea bargaining by the state to the detriment of other defendants." *Davis v. State*, supra at 614. As we noted in *Davis*, however, a different question might be presented if the "defendant sought to introduce evidence in the sentencing phase of trial that he had offered to plead guilty but the state refused the offer." Id. at 614, fn. 9.

Giving the defendant the choice to present evidence that he offered to plead guilty would not implicate the defendant's right not to incriminate himself, as was the situation in *Thomas*, supra. Nor would it deter or preclude plea bargaining by the state, as would proof that the state made an offer of a life sentence, but withdrew it. Here, the defendant offered conditionally to plead guilty and the state refused the offer. If the defendant wishes to inform the jury that he offered to plead guilty in exchange for a life sentence, the state reasonably and properly may argue that nothing less than a death sentence is appropriate and ask why the defendant did not simply plead unconditionally and allow the jury to impose sentence.[4] In short, we do not agree that the state would be handicapped in its response, or that it would be unfair to the state to allow the defendant to present evidence of his conditional offer to plead guilty. We see no reason to bar the defendant from presenting this evidence if he elects to do so.[5]

5. We affirm the trial court as to those issues addressed in Divisions 1 through 3 of this opinion. We reverse the court's ruling barring the defendant from presenting evidence at the sentencing phase of the trial of his offer to plead guilty in exchange for the state's agreement not to seek a death sentence against him.

*Judgment affirmed in part and reversed in part. Clarke, C. J., Hunt, P. J., and Fletcher, J., concur; Benham and Hunstein, JJ., dissent as to Division 4 and to the reversal in part.*

---

[4] See *Browner v. State*, 257 Ga. 321 (2), (4) (357 SE2d 559) (1987), which holds that, when a defendant pleads guilty in a death penalty case, a trial court may order a jury trial on the issue of sentence. The defendant is entitled to know, before he enters his plea, whether the court or a jury will impose sentence. Mobley attempted to condition his guilty plea on a life sentence, not on whether he would receive a jury trial on the issue of sentence.

[5] We disagree with the dissenting opinion that the exclusion of mitigating evidence could ever be justified by the state's inability to counter such evidence by arguing that the defendant ought to be given a death sentence to ensure that he will not be paroled. The jury's decision, as we have held many times, is supposed to be based on whether or not the defendant deserves to die for his crime, not on whether or not he might be paroled. OCGA § 17-8-76 (a). If that is unfair to the state, the remedy is to amend the Code, not to exclude mitigating evidence.

BENHAM, Justice, dissenting.

I concur in all of the majority opinion except Division 4, to which I respectfully dissent.

Appellant has sought to introduce evidence of his offer to plead guilty to all offenses charged, with the maximum sentence imposed on each charge and the sentences running consecutively, on the condition that the State not seek the death penalty. As to the admissibility of testimony concerning that offer the majority opinion states as follows:

> If the defendant wishes to inform the jury that he offered to plead guilty in exchange for a life sentence, the state reasonably and properly may argue that nothing less than a death sentence is appropriate and ask why the defendant did not simply plead unconditionally and allow the jury to impose sentence. [Cit.] In short, we do not agree that the state would be handicapped in its response, or that it would be unfair to the state to allow the defendant to present evidence of his conditional offer to plead guilty. We see no reason to bar the defendant from presenting this evidence if he elects to do so.

While the issue of the admissibility of appellant's offer of a conditional plea is a matter of first impression for this court, the issue of testimony concerning plea negotiations in general is not a matter of first impression. In *Davis v. State*, 255 Ga. 598 (24) (340 SE2d 869) (1986), this court said:

> [An offered plea of guilty] is neither mitigating nor aggravating, i.e., it does not relate to the defendant's character, prior record, or to the circumstances of the offense; therefore, it is correctly excluded as irrelevant. OCGA § 17-10-30 (b); *Wilson v. State*, 250 Ga. 630, 639 (300 SE2d 640), cert. denied, 404 U. S. 865 (1983). The fact that a defendant has withdrawn a guilty plea would be inadmissible against him. Similarly, the fact that the state had withdrawn its offer should be inadmissible. A contrary rule would deter or preclude plea bargaining by the state to the detriment of other defendants.

Whenever this court has been called upon in the past to consider the issue of guilty plea evidence, it has taken a position inconsistent with the approach taken by the majority in this case. *Thomas v. State*, 248 Ga. 247 (11) (282 SE2d 316) (1981); *Davis v. State*, supra.

An obvious reason for not allowing a defendant to offer evidence of an offered guilty plea is the prohibition against the State offering evidence concerning the possibility of parole.

No attorney at law in a criminal case shall argue to or in the presence of the jury that a defendant, if convicted, may not be required to suffer the full penalty imposed by the court or jury because pardon, parole, or clemency of any nature may be granted. . . .

OCGA § 17-8-76 (a). See also *Quick v. State*, 256 Ga. 780 (353 SE2d 497) (1987); *McGruder v. State*, 213 Ga. 259, 266-267 (98 SE2d 564) (1957).

It is axiomatic that in the trial of a criminal case, the burden of proof is on the State to prove the guilt of the accused beyond a reasonable doubt. And in the sentencing stage of a death penalty case, the burden is on the State to prove aggravating circumstances beyond a reasonable doubt. However, in the presentation of evidence, we seek to provide equal opportunities to the parties to present evidence supporting their claims and we allow them to draw reasonable inferences from that evidence in their argument to the jury. Since we have a blanket prohibition against the introduction of evidence concerning parole, it would seem to be incongruous to allow a defendant to offer evidence as to his attempted guilty plea without at the same time allowing the State an opportunity to fully explain why the plea was refused.

A danger which is readily apparent but is not mentioned by the majority opinion is the possibility that the availability of the plea offer as evidence in mitigation will force some attorneys to recommend that their clients offer pleas of guilty just to establish evidence of the offer to be introduced at the sentencing stage. Such a strategy may have a chilling effect on the lawyer's ability to present a vigorous defense during the guilt-innocence phase for fear that the jury will take punitive action in the sentencing phase once it is discovered that the defense which was offered in the guilt-innocence stage was lacking in sincerity.

The goal of the majority opinion is very laudable in that it seeks to allow a defendant to acknowledge responsibility for his criminal act before the jury determines a sentence. Unfortunately, this laudable goal may quickly degenerate into just another trial tactic, a sword with two edges which turns too easily in the hand. Because I fear that the holding in Division 4 of the majority opinion will cause more harm than good, I dissent.

I am authorized to state that Justice Hunstein joins this dissent.

DECIDED FEBRUARY 18, 1993 —
RECONSIDERATION DENIED MARCH 4, 1993.

*Summer & Summer, Daniel A. Summer,* for appellant.
*C. Andrew Fuller, District Attorney, Leonard C. Parks, Assistant District Attorney,* for appellee.